UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAKHA ABULADZE, et al.,

                 Plaintiffs,

   -v-

APPLE COMMUTER INC., et al.,

                 Defendants.

CIVIL ACTION NO.: 22 Civ. 8684 (GHW) (RFT)

**REPORT AND RECOMMENDATION**

TO THE HONORABLE GREGORY H. WOODS, UNITED STATES DISTRICT JUDGE:

In their Second Amended Complaint ("SAC"), Plaintiffs[1] bring this action against multiple

companies and individuals owning hotels around New York City (collectively, the "Hotel

Defendants"),[2] as well as against Defendants Apple Commuter Inc. ("Apple"), a staffing agency

---

[1]     The Plaintiffs are Kakha Abuladze; Erkegul Alshimbay; Temurbek Amonov; Albert Artabaev; Olesya Balakireva; Parviz Bashirov; Ketevan Chauchua; Sayana Domshoeva; Natia Duduchava; Giorgi Gabisonia; Alisher Jabbarov; Ilya Kalpakbayeva; Nadezhda Khaltanova; Beka Khipashvili; Natalia Lapina; Anuki Lomidze; Gvantsa Mierzejewski A/K/A Christina Margalitashvili; Chingiz Mirzamseitov; Irina Mitrokhina; Aidar Orynbekov; Valentina Pokrovskaia; Nursulu Taukebayeva; Dzerassa Temiraeva; Akzharkyn Yedrissova; Tamar Zabakhidze and Anna Tchebekova.

[2]     Defendants Edison Management Co. LLC A/K/A Edison Hotel; 237 West 54 Owner LLC A/K/A Hilton Garden Inn (54); HHLP 52 Lessee LLC AKA Hilton Garden Inn (52); PNY III LLC A/K/A Hilton Manhattan/Westgate; CDL Hotels USA Inc. A/K/A Millennium Hilton; HHLP Duo Three Lessee LLC A/K/A Holiday Inn Express; Brisam Management DE LLC A/K/A Holiday Inn Chelsea; Patel Khanbudhai/Comfort Inn A/K/A Comfort Inn Chelsea/Heritage Hotel; New Generation Management Corp. A/K/A La Quinta/Hotel at 5th Avenue; Wolcott Hotel Co. A/K/A Wolcott Hotel; S&G Hotel Corp. A/K/A St. James Hotel; The Shoreham LLC A/K/A Shoreham Hotel; Eros Management & Realty LLC A/K/A Tryp by Wyndham; The Shoreham LLC A/K/A Shoreham Hotel; Hampton Inn A/K/A Hampton Inn Times Sq. South; New York Marketing Inc. A/K/A NYMA ("NYMA"); Moosazadeh, Haymoon Diedrich, Michael A/K/A Hotel at Times Square; HHLP Duo Two Lessee LLC Candlewood Suites; Executive Le Soleil New York LLC A/K/A Executive Hotel; 4 West 31 Street XYZ Corp; 228 West 47 Street XYZ Corp.; 237 West 54 Street XYZ Corp.; 206 East

that sent Plaintiffs to work as concierges at hotels owned and operated by the Hotel Defendants and Biren J. Shah ("Shah"), Apple's owner (together, the Hotel Defendants, Apple and Shah are the "Defendants"). (*See generally* ECF 61, SAC.)

In the SAC, Plaintiffs allege claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for, among other things, failure to be compensated properly (*see id.* ¶¶ 158-95), as well as under New York common law for breach of contract and unjust enrichment (*see id.* ¶¶ 196-205). The FLSA claims are brought as an opt-in collective action under 29 U.S.C. § 216(b), and the NYLL claims are brought as a proposed class action. (*See id.* ¶¶ 130-42.)

Pending before this Court is a motion to dismiss pursuant to Rules 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure brought by Defendants Edison Hotel, Hilton Garden Inn (54), Hilton Garden Inn (52), Holiday Inn Chelsea, Wolcott Hotel, NYMA, Hotel at Times Square, Executive Hotel and 4 West 31 Street XYZ Corp. (collectively, the "Moving Hotel Defendants").[3] (*See* ECF 62, 6/9/23 Not. of Mot.) Having carefully reviewed the filings on the docket, and for the reasons set forth below and as specified herein, I respectfully recommend that the motion

---

52 Street XYZ Corp.; 304 East 42 Street XYZ Corp.; One United Nations Plaza XYZ Corp.; 343 West 39 Street XYZ Corp.; 232 West 29 Street XYZ Corp.; 18 West 25 Street XYZ Corp.; 17 West 32 Street XYZ Corp.; 4 West 31 Street XYZ Corp.; 109 West 45 Street XYZ Corp.; 345 West 35 Street XYZ Corp.; 33 West 55 Street XYZ Corp.; 250 West 43 Street; 851 Eighth Avenue XYZ Corp.; 337 West 39 Street XYZ Corp.; 6 West 32 Street XYZ Corp.; 59 West 46 Street XYZ Corp.; and 38 West 36 Street XYZ Corp., together with Defendant John/Jane Doe, who appears to be affiliated with the hotels (*see* ECF 61, SAC ¶ 5), are the Hotel Defendants.

[3]     Millennium Hilton was originally one of the Moving Defendants, but after the motion to dismiss was filed, Plaintiffs submitted a Notice of Voluntary Dismissal Pursuant to Rule 41(a)(1)(A)(i), dismissing without prejudice Millennium Hilton. (*See* ECF 77, Not. of Voluntary Dismissal.) The Court so ordered that notice on December 21, 2023. (*See* ECF 78.)

to dismiss be GRANTED IN PART and DENIED IN PART as to all Defendants except Defendants

Apple and Shah.[4]

---

[4] No claims against Apple and Shah should be dismissed because they are stayed due to bankruptcy proceedings, which are pending in the Bankruptcy Court for the Eastern District of New York, *see In re Shah,* Chapter 11 Case No. 22-BK-41938-ESS (Bankr. E.D.N.Y 2022); *In re Apple Commuter*, Ch. 11 Case No. 23-BK-41107-ESS (Bankr. E.D.N.Y. 2023). *See In re Sklar*, 626 B.R. 750, 764 (Bankr. S.D.N.Y. 2021).

This Report and Recommendation encompasses the claims against all Defendants currently remaining in the case, including Defendants Hilton Manhattan/Westgate; Holiday Inn Express; Comfort Inn Chelsea/Heritage Hotel; Tryp by Wyndham; St. James Hotel; Shoreham Hotel; Hampton Inn Times Sq. South; and HHLP Duo Two Lessee LLC Candlewood Suites (collectively, the "Non-Appearing Defendants"), which have been served but have not appeared in this case and have not been dismissed. (*See* ECF 1, Not. of Removal Exs. B, J, V, W, Y, Z, AA, BB, CC, DD.) Even though the Non-Appearing Defendants have not appeared, answered the SAC, or moved to dismiss the SAC, the reasons for dismissing claims against the Moving Hotel Defendants apply equally to the Non-Appearing Defendants, and so including the Non-Appearing Defendants in my recommendations is permissible. *See Milton v. Ocwen Mortg. Servicing, Inc.,* No. 16-CV-3837 (MKB) (JO), 2017 WL 2992489, at *4 (E.D.N.Y. July 14, 2017) (dismissing claims against non-appearing defendants on the same grounds applicable to defendants that appeared); *Vondette v. McDonald*, No. 00-CV-6874 (DC), 2001 WL 1551152, at *1 n.2 (S.D.N.Y. Dec. 5, 2001) ("Although defendant Park has not joined in the other defendants' motions, this Court will nonetheless enter judgment dismissing the action as to all defendants, on its own motion."); *Raitport v. Chemical Bank*, 74 F.R.D. 128, 134 (S.D.N.Y. 1977) ("No conceivable purpose can be served by awaiting the receipt of motion papers from the less diligent counsel."); *see also Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (noting that "[b]oth the Supreme Court and the Second Circuit have long held that courts may dismiss actions on their own motion in a broad range of circumstances where they are not explicitly authorized to do so by statute or rule"). I gave Plaintiffs the opportunity to submit a letter either setting out any new arguments in opposition to the motion to dismiss the claims against the non-Appearing Defendants or indicating that they intended to stand on their memorandum dated July 10, 2023, in opposition to the motion to dismiss the SAC (ECF 65). (*See* ECF 68, 11/29/23 Order.) Plaintiffs indicated that they wished to stand on their July 10, 2023 filing. (*See* ECF 73, 12/18/23 Letter.)

## FACTUAL BACKGROUND

For purposes of the pending motion to dismiss, the Court accepts Plaintiffs' allegations as true and draws all reasonable inferences in their favor. *See City of Providence v. BATS Glob. Mkts., Inc.*, 878 F.3d 36, 50 (2d Cir. 2017).

Plaintiffs include with the SAC charts indicating which hotels they worked at during which weeks and for how many hours. (*See* ECF 61, SAC ¶¶ 5-56.) [5] As relevant to the pending motion, Plaintiffs also allege as follows:

Defendant Shah owned and operated Defendant Apple, which held itself out as a provider of transportation and concierge staffing services for hotels throughout New York City, including hotels owned and operated by the Hotel Defendants. (*See id.* ¶ 3.) Defendants Apple and Shah hired newly arrived immigrants, including Plaintiffs, to provide the concierge staffing services and compelled them to work five to seven days per week and more than 12 hours per day, for compensation of five dollars per hour, which was below the relevant minimum wage, with no overtime pay and no "spread of hours" pay. (*See id.* ¶¶ 6, 8, 122-23.) Plaintiffs were not permitted to take personal or sick days and did not receive any benefits. (*See id.* ¶ 85.) Defendant Shah made Plaintiffs execute an employment contract but did not provide them with copies. (*See id.* ¶ 81.)

Defendant Shah "issue[d] commands concerning at which Hotel the employee will be employed and for how long." (*Id.* ¶ 84.)

---

[5] The numbering of paragraphs in the SAC restarts at page 7 from paragraph 1; on pages 47-48, the SAC numbering of paragraphs skips from paragraph 142 to paragraph 158.

Plaintiffs' work was limited to the premises of the hotels owned and operated by the Hotel Defendants, and Plaintiffs could not be distinguished from other hotel workers. (*See id.* ¶ 4.) The Hotel Defendants provided Plaintiffs with materials and equipment, such as desks, telephones, office supplies and uniforms, which the Plaintiffs used to do their jobs. (*See id.*¶¶ 88, 97.) The Hotel Defendants also provided Plaintiffs with coffee and snacks. (*See id.* ¶ 99.)

Defendants "possessed substantial control over the policies and practices with respect to the employment and compensation of the Plaintiffs." (*Id.* ¶ 102.) The Hotel Defendants set Plaintiffs' work schedules and payment methods. (*See id.* ¶ 92.) At times, Defendants directed Plaintiffs to work off the clock, that is, not reporting the time they worked. (*See id.* ¶ 124.) The managers at each Hotel Defendant coordinated Plaintiffs' schedules to make sure that concierge services were provided around the clock to hotel guests. (*See id.* ¶ 98.)

Defendants "had a right to control the means and manner of the Plaintiffs' performance." (*Id.* ¶ 95.) After the Plaintiffs started their shifts for a particular Hotel Defendant, they "belonged" to that hotel for the duration of their shifts. (*See id.* ¶ 89.) During a shift, each Plaintiff worked "predominantly" or "exclusively" for one Hotel Defendant, which had "complete control" over that Plaintiff and his or her activities. (*Id.* ¶ 93.) Plaintiffs "reported to, took orders from, and were subject to discipline by, managers and supervisors designated by the Hotel Defendants." (*Id.* ¶ 92.)

When a Plaintiff would step away from the concierge desk at a hotel, a Hotel Defendant's manager would complain that the Plaintiff should not leave the desk unattended. Some of the Hotel Defendants' managers required the Plaintiffs working at their hotels to stand for the entirety of their 12-hour shifts. (*See id.* ¶ 4.) Receptionists at the Hotel Defendants

directed hotel guests to Plaintiffs for concierge services. (*See id.* ¶ 95.) Plaintiffs were also expected to help hotel guests store their luggage, and Plaintiffs had a key to the luggage rooms at the hotels. (*See id.* ¶ 100.)

If Plaintiffs objected to Defendants' demands, they were "badgered, ridiculed, and/or emotionally tormented with threats of blackmail." (*See id.* ¶ 86.)

Plaintiffs worked for specific Hotel Defendants on a long-term basis. (*See id.* ¶ 93.) If the arrangement between a Hotel Defendant and Defendants Apple and Shah broke down, the Hotel Defendant could choose to continue to employ those Plaintiffs who had been working at its hotel. (*See id.* ¶ 91.)

Defendants "willfully" disregarded the requirements of the FLSA and NYLL to keep complete and accurate time sheets and payroll records. (*See id.* ¶ 128.)

**PROCEDURAL HISTORY**

On April 7, 2022, Plaintiffs filed a complaint in the Supreme Court, County of New York, alleging, among other things, violations of the FLSA and the NYLL. (*See* ECF 1, Not. of Removal Ex. A; ECF 55, 2/21/23 Tr. at 24.)

On August 11, 2022, Defendant Shah filed for Chapter 11 bankruptcy in the Bankruptcy Court for the Eastern District of New York. (*See* ECF 55, 2/21/23 Tr. at 25; *In re Shah,* Chapter 11 Case No. 22-BK-41938-ESS (Bankr. E.D.N.Y 2022).)

On October 2, 2022, Defendants removed Plaintiffs' case to this Court. (*See* ECF 1, Not. of Removal.) On November 30, 2022, certain of the parties filed a joint letter motion for extension of time for Plaintiffs to file an amended complaint and for Defendants to respond to the amended complaint (*see* ECF 28, 11/30/22 Joint Letter Mot.), which motion was granted

(*see* ECF 33, 12/1/22 Order). On January 4, 2023, Plaintiffs filed an amended complaint seeking, among other things, recovery of unpaid wages. (*See generally* ECF 37, Am. Compl.)

On February 21, 2023, Magistrate Judge Katharine H. Parker held a pre-motion conference to discuss a motion to dismiss contemplated by the Moving Hotel Defendants. (*See generally* ECF 55, 2/21/23 Tr.) During that conference, Judge Parker asked Plaintiffs' counsel whether they wished to further amend the complaint, pointing out that the Moving Hotel Defendants' counsel had raised concerns about the sufficiency of the allegations that the Hotel Defendants were joint employers as well as the absence of allegations about when Plaintiffs had worked on the properties of specific Hotel Defendants; Judge Parker warned Plaintiffs' counsel that there would be no further opportunities to amend. (*See id.* at 43-48, 50.)

On March 31, 2023, Defendant Apple filed a Chapter 11 bankruptcy petition in the Bankruptcy Court for the Eastern District of New York. *See In re Apple Commuter*, Ch. 11 Case No. 23-BK-41107-ESS (Bankr. E.D.N.Y. 2023). In light of the Chapter 11 filings by Defendants Shah and Apple, Plaintiffs' case against those two Defendants was automatically stayed pursuant to 11 U.S.C. § 362. However, the matter was not stayed as to the other Defendants. *See In re Sklar*, 626 B.R. 750, 764 (Bankr. S.D.N.Y. 2021).

On May 4, 2023, Plaintiffs filed their SAC, which provided additional information about the dates on which each Plaintiff worked at each Hotel Defendant's property. (*See* ECF 61, SAC ¶¶ 5-56 at pp. 7-33.)

On June 9, 2023, the Moving Hotel Defendants filed a motion to dismiss the SAC and a supporting brief. (*See* ECF 62, 6/9/23 Not. of Mot.; ECF 64, Moving Hotel Defs.' Mem.) The Moving Hotel Defendants argue that Plaintiffs' FLSA claims, NYLL claims, and common law

claims should be dismissed; they do not ask the Court to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims in the event the Court dismisses the federal law claims. Plaintiffs filed their opposition papers on July 10, 2023. (*See* ECF 65, Pls.' Opp.) The Moving Hotel Defendants filed their reply memorandum on August 1, 2023. (*See* ECF 67, Moving Hotel Defs.' Reply.) On November 15, 2023, the referral to Magistrate Judge Parker was reassigned to me.

On November 29, 2023, I issued an order addressing four preliminary issues relating to this case. First, I directed Plaintiffs to show cause why the claims against certain "Placeholder Defendants"[6] should not be dismissed with prejudice under Rule 4(m) of the Federal Rules of Civil Procedure for failure to serve. (*See* ECF 68, 11/29/23 Order.) Second, I directed Plaintiffs to show cause why the claims against certain "Omitted Defendants" [7] should not be dismissed

---

[6]    Defendants 206 East 52 Street XYZ Corp.; 228 West 47 Street XYZ Corp.; 304 East 42 Street XYZ Corp.; One United Nations Plaza XYZ Corp.; 343 West 39 Street XYZ Corp.; 232 West 29 Street XYZ Corp.; 18 West 25 Street XYZ Corp.; 17 West 32 Street XYZ Corp.; 4 West 31 Street XYZ Corp.; 109 West 45 Street XYZ Corp.; 345 West 35 Street XYZ Corp.; 33 West 55 Street XYZ Corp.; 337 West 39 Street XYZ Corp.; 6 West 32 Street XYZ Corp.; 59 West 46 Street XYZ Corp.; 237 West 54 Street XYZ Corp.; and 38 West 36 Street XYZ Corp "are entities that have yet to be identified that either own or control entities legally responsible for the actions complained of." (*See id.* ¶ 77.) Those Defendants, together with Defendant John/Jane Doe, who appears to be an affiliate of the hotels, are the "Placeholder Defendants"). (*See id.* at introductory paragraph, ¶¶ 5, 57-77 (listing Defendants).)

[7]    The SAC contains no reference to any of the following entities, some of which may have been named in earlier versions of the complaint; but they were still listed as defendants on the docket and had not been terminated at the time of my Order of November 29, 2024: Comfort Inn A/K/A Comfort Inn Times Square; Imperial Hotel LLC A/K/A Imperial Court Hotel; Alphonse Hotel Corp. A/K/A Hotel Carter; RPH Hotels 51 Street Owner LLC A/K/A Hampton Inn Times Square North; New Generation Management Corp. A/K/A Best Western Plus Plaza Hotel; Gemini 37 W. 24 Street LLC A/K/A Wyndham Garden; Wyndham Hotel Management Group; 305 West 39 Street XYZ Corp.; 307 West 79 Street XYZ Corp.; 250 West 43 XYZ Corp.; 851 Eighth Ave. XYZ Corp.; 111 Eighth Ave. XYZ Corp.; 3934 21st St. Long Island City XYZ Corp.; 38-61 12th

with prejudice under Rule 41(b) of the Federal Rules of Civil Procedure. (*See id*.) Third, I provided Plaintiffs with notice that, in the interest of efficiency, I intended to include the claims against the Non-Appearing Defendants in my Report and Recommendation addressing the pending motion to dismiss the SAC; I ordered Plaintiffs to submit a letter either setting out any new arguments in opposition to the motion to dismiss the claims against the Non-Appearing Defendants or indicating that they intended to stand on ECF 65, which is their memorandum dated July 10, 2023, in opposition to the motion to dismiss the SAC. (*See id*.) Finally, I directed Plaintiffs to address the argument that the SAC did not provide sufficient information to allege an employment relationship between Plaintiffs and four of the Hotel Defendants. (*See id*.)

On December 18, 2023, Plaintiffs submitted a Notice of Voluntary Dismissal Pursuant to Rule 41(a)(1)(A)(i), dismissing without prejudice the Omitted Defendants and the Placeholder Defendants (*see* ECF 72, Not. of Voluntary Dismissal), which the Court so ordered on December 19, 2023 (*see* ECF 75.) Plaintiffs also indicated their intention to stand on their filing of July 10, 2023, in support of denying the motion to dismiss, rather than raise additional arguments directed at the Non-Appearing Defendants. (*See* ECF 73, 12/18/23 Letter.) Plaintiffs responded to the argument that the SAC did not sufficiently allege an employment relationship between Plaintiffs and four of the Hotel Defendants by submitting a declaration providing additional information about the locations where certain Plaintiffs worked. (*See* ECF 74, 12/18/23 Decl. ¶¶ 6-21.) Plaintiffs also submitted a separate Notice of Voluntary Dismissal Pursuant to Rule

---

St. Long Island City XYZ Corp.; 27 West 24th St. XYZ Corp.; and the Chetrit Group LLC. (collectively, the "Omitted Defendants") (*See* ECF 61, SAC ¶¶ 57-77 (listing Defendants).)

41(a)(1)(A)(i), dismissing without prejudice Defendant Millennium Hilton (*see* ECF 77, Not. of Voluntary Dismissal), which the Court so ordered on December 21, 2023 (*see* ECF 78).

**LEGAL STANDARDS FOR MOTIONS TO DISMISS**

**I.      Failure To Join Defendant Shah**

The Moving Hotel Defendants ask the Court to dismiss the entirety of the SAC against all Defendants pursuant to Rule 12(b)(5) for failure to serve Defendant Shah, on the theory that he is an indispensable party pursuant to Rule 19. (*See* ECF 64, Moving Hotel Defs.' Mem. at 9.) To begin with, a motion to dismiss a complaint for failure to join an indispensable party is made pursuant to Rule 12(b)(7), which permits motions to dismiss for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).

Rule 19 establishes a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party. *See* Fed. R. Civ. P. 19; *see also Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). First, the court must determine whether an absent party is required under Rule 19(a). *See Viacom*, 212 F.3d at 724. If the absent party is not required under Rule 19(a), the court does not need to decide whether his absence warrants dismissal under Rule 19(b). *See id.* If the absent party is a required party, and he cannot be joined for jurisdictional or other reasons, the court must determine whether the absent party is indispensable under Rule 19(b). *See id.* at 725. If the absent party is indispensable, the action should be dismissed. *See id.*

 "[T]he burden is on the party moving under Rule 12(b)(7) to show the nature of the unprotected interests of the absent individuals or organizations and the possibility of injury to them or that the parties before the court will be disadvantaged by their absence." 5C Charles A.

Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1359 at 67-68 (3d ed. updated Apr. 2023). There is a "generally accepted principle that the court is not limited to the pleadings on a Rule 12(b)(7) motion." *Fagioli S.p.A. v. Gen. Elec. Co.*, No. 14-CV-7055 (AJN), 2015 WL 3540848, at *4 (S.D.N.Y. June 5, 2015); *see also American Ins. Co. v. Kartheiser*, No. 17-CV-5545 (JMF), 2018 WL 2388533, at *1 (S.D.N.Y. May 25, 2018).

## II.     Failure To State a Claim

The Moving Hotel Defendants also ask the Court to dismiss the SAC pursuant to rule 12(b)(6), on several different grounds, which are discussed below. (*See generally* ECF 64, Moving Hotel Defs.' Mem.) A defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662 at 678.

In deciding a motion to dismiss, the Court "must accept as true all of the allegations contained in a complaint[,]" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Although Rule 8 "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim is a "context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

**DISCUSSION**

I.      **Plaintiffs Did Not Fail To Serve a Necessary and Indispensable Party**

The Moving Hotel Defendants argue that the case should be dismissed in its entirety as against all Defendants because Defendant Shah is an indispensable party who was not joined because he was not properly served. (*See* ECF 64, Moving Hotel Defs.' Mem. at 9.) At the time of the deadline for serving Shah, the case had not yet been removed to federal court: having initially filed this case in state court on April 7, 2022, Plaintiffs had until August 5, 2022, to effect service on Shah, *see* CPLR § 306-b, and the case was not removed until October 2, 2022. (*See* ECF 1, Not. of Removal.)

A plaintiff bears the burden of proving adequate service. *See Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010). Here, Plaintiffs essentially concede that Defendant Shah was not properly served: they filed no affidavit of service with respect to him and take the position that because Defendant Shah was the owner and president of Defendant Apple, which was properly served via the Secretary of State, he would have received a copy of the complaint in this action (*see* ECF 65, Pls.' Opp. at 10).

Receipt of a copy of the complaint does not constitute effective service under federal or state law.[8] Actual notice does not subject Defendants to personal jurisdiction if service was not

---

[8]     CPLR § 308 provides for service on an individual by "delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served." CPLR § 308. The deadline for serving Shah expired while this case was still pending in state court, so the federal rules for service would not

made in compliance with the relevant provisions. *See Bank of Am. Nat. Tr. & Sav. Ass'n v. Herrick*, 650 N.Y.S.2d 754, 755 (2d Dep't 1996) ("[E]ven if a defendant eventually acquires actual notice of the lawsuit, actual notice alone will not sustain the service or subject a person to the court's jurisdiction when there has not been compliance with prescribed conditions of service.") (citations omitted); *Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 373 (2d Cir. 1978). Plaintiffs failed to perfect service on Shah within the requisite time frame, and a few days later, on August 11, 2022, he became subject to an automatic bankruptcy stay. *See In re Shah,* Chapter 11 Case No. 22-BK-41938-ESS (Bankr. E.D.N.Y 2022).

Since Plaintiffs failed to perfect service on Shah (and cannot do so while the bankruptcy stay is in place), this Court is without jurisdiction over him and cannot render a judgment in this matter against him. Therefore, if Defendant Shah were an indispensable party to this action, the SAC would have to be dismissed. *See Metro. Life Ins. Co. v. Dumpson*, 194 F. Supp. 9, 11 (S.D.N.Y. 1961).

To decide whether Defendant Shah is an indispensable Party, the Court must first determine whether he is a required party under Rule 19(a). *See Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 257 (S.D.N.Y. 2010) (citing *Viacom*, 212 F.3d at 725). Rule 19(a)(1) provides:

---

have come into play. Nevertheless, to the extent relevant, Rule 4 provides for personal service on an individual: by "delivering a copy of [the summons and complaint] to an agent authorized by appointment or by law to receive service of process," Fed. R. Civ. P. 4(e)(2), or in compliance with the law of the forum state, s*ee* Fed. R. Civ. P. 4(e)(1). Service on the Secretary of State does not meet the requirements for service on an individual under the CPLR or Rule 4 where, as here, there is no indication that the individual authorized the Secretary of State to be his agent for purposes of service.

A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction is required if: (A) in that person's absence, the court cannot accord complete relief among existing parties, or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in that person's absence may (i) as a practical matter impair or impede the person's ability to protect its interest, or (ii) leave an existing party subject to substantial risk of incurring, double, multiple or inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

The Moving Hotel Defendants argue, without explanation, that "it is difficult to see how Plaintiffs could be accorded complete relief without Defendant Shah, the individual who employed [Plaintiffs] and whose compensation structure is at issue in the suit." (ECF 64, Moving Hotel Defs.' Mem. at 10.) However, Plaintiffs allege that Defendants are joint employers who are jointly and severally liable under the FLSA and NYLL for any damages award in Plaintiffs' favor. (*See* ECF 61, SAC ¶¶ 88-106.) If Plaintiffs can establish that Defendants were joint employers, then Plaintiff need only demonstrate the existence of FLSA or NYLL violations to subject all Defendants to liability. *See Fallon v. 18 Greenwich Ave., LLC*, No. 19-CV-9579 (MKV), 2021 WL 1105066, at *3 (S.D.N.Y. Mar. 23, 2021). Accordingly, the Court could provide complete relief among the existing parties. *Cf. Temple v. Synthes Corp., Ltd.,* 498 U.S. 5, 7 (1990) ("It has long been established that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."). Therefore, the Moving Hotel Defendants have not shown that Defendant Shah is a required party under Rule 19(a)(1)(A).

The Moving Hotel Defendants have not argued – let alone met their burden of demonstrating – that Defendant Shah is a required party under the alternative ground provided by Rule 19(a)(1)(B). They have not explained how Defendant Shah's lack of participation in this litigation impedes his ability to protect his interests or leaves the Moving Hotel Defendants

subject to a substantial risk of multiple or inconsistent obligations. Even if the Moving Hotel Defendants were found liable to Plaintiffs as joint employers, the Moving Hotel Defendants could seek indemnification or contribution from Defendant Shah in a separate suit.

Since the Moving Hotel Defendants have not met their burden of showing that Defendant Shah is a required party, no further analysis under Rule 19 is required, and the case should not be dismissed as to all Defendants for failure to join an indispensable party. *See Viacom*, 212 F.3d at 724.

## II.    Plaintiffs' FLSA and Some of Plaintiffs' NYLL Claims Are Time Barred

The Moving Hotel Defendants argue that under Rule 12(b)(6), the FLSA claims should be dismissed and the NYLL claims dismissed in part as time barred. (*See* ECF 64, Moving Hotel Defs.' Mem. at 11-15.)

### A.   FLSA Claims

A plaintiff must bring a FLSA claim within two years of the accrual of the cause of action, unless the FLSA violation was willful, in which case the plaintiff has three years to bring suit. *See* 29 U.S.C. § 255(a).

For the three-year limitations period to apply, a "plaintiff must allege facts at the pleadings stage that give rise to a plausible inference that a defendant willfully violated the FLSA." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021). A court need not accept as true a plaintiff's conclusory allegations that a defendant willfully violated the FLSA. *See id.* at 321. Instead, "a plaintiff must allege facts that permit a plausible inference that the defendant willfully violated the FLSA" for the three-year exception to apply. *Id.* at 323. The Second Circuit declined "to adopt a rule that would allow a claim that a 'complaint clearly shows [to be] out of

time' to proceed through discovery upon the insertion of a single legal conclusion – indeed, a single word – into a complaint." *Whiteside*, 995 F.3d at 323  (quoting *Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir. 1991) (citation omitted)). Therefore, for the three-year exception to apply, a plaintiff must plead "factual content that allows the court to draw the reasonable inference" that the defendant's conduct was willful. *Whiteside*, 995 F.3d at 323 (quoting *Iqbal,* 556 U.S. at 678) (internal quotation marks omitted).

An employer's FLSA violation was willful when the employer "'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act." *Id.* at 324 (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009)). "Mere negligence is insufficient." *Id.* (quoting *Young*, 586 F.3d at 207) (internal quotation marks omitted). That is, "if an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." *Id.* (quoting *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995) (internal quotation marks and alterations omitted)).

In *Whiteside,* the Second Circuit found that, in the absence of allegations by the plaintiff either that he complained about the potential FLSA violation to his managers or that any of his managers said anything to him suggesting an awareness of impropriety, the plaintiff had not adequately pleaded willfulness, particularly since those details would have been within his knowledge. *See id*.

Plaintiffs here, like the plaintiff in *Whiteside*, do not plead with specificity that they complained about potential FLSA violations to their managers. Instead, they allege that, "[i]f Plaintiffs … object to or protest Defendants' demands, they are badgered, ridiculed, and/or emotionally tormented with threats of blackmail." (ECF 61, SAC ¶ 86.) The allegation speaks

generally about what would happen if Plaintiffs complained. It does not describe the content of any complaints by Plaintiffs. Notably, Defendants' alleged demands included both requirements that would not support a FLSA claim – such as standing for the entirety of a shift (*see id.* ¶ 4) – and requirements that could support a FLSA claim – such as working off the clock (*see id.* ¶ 124). The specific contents of Plaintiffs' complaints are within their knowledge, and so Plaintiffs could have described their complaints in the SAC. They did not.

Nor do Plaintiffs allege that any of their managers did or said anything suggesting an awareness of impropriety. The allegation that complaints would be met with badgering, ridicule and threats of blackmail is insufficiently specific, since it does not indicate which Plaintiffs were treated this way by which managers at which hotels. And this allegation is equally consistent with the possibility that the Hotel Defendants were unaware of possible FLSA violations but wanted Plaintiffs to stop complaining, as with the possibility that those Defendants were aware of possible FLSA violations and were trying to prevent Plaintiffs from demanding additional wages. "Where a plaintiff pleads facts that are 'merely consistent with' a defendant's liability, [the complaint] 'stops short of the line between possibility and plausibility.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Plaintiffs ask the Court to infer that the Moving Hotel Defendants knew or should have been aware that Plaintiffs were not paid all the wages they were due. (*See* ECF 65, Pls.' Opp. at 16.) To begin with, this is not the proper standard: a FLSA violation is willful only when the defendant knew or recklessly disregarded whether its conduct violated the Act. *See Whiteside*, 995 F.3d at 324. Here, Plaintiffs allege that the Hotel Defendants set Plaintiffs' schedules and payment methods, knew Plaintiffs worked five to seven days per week and more than 12 hours

per day, and sometimes directed Plaintiffs to work off the clock. (*See* ECF 65, Pls.' Opp. at 12.)

However, the SAC contains no allegation that the Hotel Defendants knew or recklessly

disregarded that Plaintiffs were paid five dollars per hour and did not receive overtime or

spread of hours wages. And because many of the Plaintiffs worked at more than one hotel each

week, it would have been difficult for the Hotel Defendants to have known how many hours

each Plaintiff was working. As such, the SAC does not adequately allege that the Hotel

Defendants engaged in willful violations of the FLSA.

Plaintiffs argue that even if they have not adequately alleged willfulness, their claims are

not time barred, either because the statute of limitations should be equitably tolled due to

COVID (*see id*. at 13) or based on the continuing violation doctrine (see *id.* at 12). These efforts

to rescue their time-barred FLSA claims are unsupported by caselaw. On the issue of the

pandemic, as Magistrate Judge Katherine H. Parker explained:

> [The] FLSA is a federal statute and courts in this District have been reluctant to
> enact broad-sweeping pandemic accommodations, choosing instead to focus on
> the specific hardships of individual parties. This Court has been operating during
> the entirety of the pandemic and there has been no bar to filing cases. Indeed, the
> number of filings in 2020 was nearly on par with 2019. Thus, COVID has not been
> a bar to filing claims.

*Carranza v. VBFS, Inc.*, No. 20-CV-2635 (PAE) (KHP), 2021 WL 1233546, at *6 (S.D.N.Y. Apr. 2,

2021). And this Court has held that the continuing violation doctrine is inapplicable to FLSA

claims, which "involve a series of repeated violations, each giving rise to a new cause of action,

and each beginning a new limitations period as to that particular event." *Acosta v. Yale Club of*

*N.Y. City*, No. 94-CV-0888 (KTD), 1995 WL 600873, at *3 (S.D.N.Y. Oct. 12, 1995) (rejecting

application of "continuing violation" theory to FLSA claims because "a new cause of action

accrues … at each regular payday immediately following the workweek during which services

were rendered") (citing *Knight v. Columbus,* 19 F.3d 579, 582 (11th Cir.), *cert. denied,* 513 U.S. 929 (1994)); *see also McGuirk v. Swiss Re Fin. Servs., Corp.,* No. 14-CV-9516 (CM), 2016 WL 10683305, at *10 (S.D.N.Y. June 17, 2016), *aff'd,* 699 F. App'x 55 (2d Cir. 2017).

Accordingly, the FLSA's two-year statute of limitations governs Plaintiffs' FLSA claims. Since Plaintiffs filed their original complaint on April 7, 2022 (*see* ECF 1-1, Not. of Removal Ex. A; ECF 55, 2/21/23 Tr. at 24), claims relating to pay periods before April 7, 2020, are time barred. Each Plaintiff ceased working for Defendants before that date (*see* ECF 61, SAC ¶¶ 5-56), and so Plaintiffs' FLSA claims against all Defendants except Apple and Shah should be dismissed in their entirety.

B. <u>NYLL Claims</u>

For claims to be timely under the NYLL, they must have arisen within the six years prior to the filing of the complaint. *See* NYLL §§ 198(3), 663(3). To account for the disruptions due to COVID, Governor Cuomo's Executive Order No. 202.8 and subsequent executive orders tolled the statute of limitations for 228 days, from March 20, 2020, until November 3, 2021, for state law claims. Courts in this Circuit interpreted the orders to apply to federal court cases involving state law statutes of limitations. *See, e.g., Marquez v. Indian Taj, Inc.*, No. 20-CV-5855 (DG) (RML), 2022 WL 4485948, at *2 (E.D.N.Y. Aug. 5, 2022) (collecting cases). Plaintiffs' NYLL claims relating to wages paid before April 7, 2016 would be time barred under the six-year statute of limitations, but that date is pushed back 228 days to August 23, 2015.

The reasons that the continuing violation doctrine does not apply to FLSA cases apply equally to NYLL cases for unpaid wages.[9] Eleven of the 26 Plaintiffs worked for Defendants before as well as on or after August 23, 2015 (*see* ECF 61, SAC ¶¶ 5, 22, 24, 26, 34, 38, 42, 44, 50, 54, 56),[10] and the NYLL claims of those Plaintiffs against all Defendants except Apple and Shah should be dismissed to the extent they involve work performed before August 23, 2015.

## III.     Plaintiffs Adequately Plead that the Hotel Defendants Were Their Joint Employers

Plaintiffs allege that, although they were directly employed by Apple and Shah, the Hotel Defendants were their joint employers. (*See* ECF 61, SAC ¶ 88.)[11] Joint employment is a well-accepted concept, even though there is "no independent test for joint employment under the FLSA." *New York v. Scalia*, 490 F. Supp. 3d 748, 776 (S.D.N.Y. 2020).

The Moving Hotel Defendants argue that Plaintiffs' joint employer allegations are inadequate because the SAC lacks specific factual allegations supporting a plausible inference

---

[9]     Additionally, the NYLL specifically permits recovery for continuing violations of its wage notice provisions. *See* NYLL § 198(1-b). The NYLL contains no comparable provision for unpaid wages claims.

[10]     The parties in question are Plaintiffs Abuladze, Duduchava, Gabisonia, Jabbirov, Lapina, Mierzejewski, Mitrokhina, Orynbekov, Temiraeva, Zabakhidze and Tcebekova. (*See* ECF 61, SAC ¶ 88.)

[11]     While it is not clear from the SAC, it appears that Plaintiffs take the position that all of the Hotel Defendants, together with Apple and Shah, were joint employers of all of the Plaintiffs; this is distinct from the position that each Hotel Defendant was a joint employer, with Apple and Shah, of those Plaintiffs who provided concierge services at hotels owned by a particular Hotel Defendant. (*See* ECF 55, 2/21/23 Tr. at 33-35.) However, this is a distinction without a difference. *See New York v. Scalia*, 490 F. Supp. 3d at 776. ("An entity is an employer if it meets the FLSA's definition. It is a joint employer if it meets the definition and another entity also meets the definition."). Any of the Hotel Defendants is a joint employer of a particular Plaintiff if it and another entity meet the definition of a joint employer with respect to that Plaintiff.

that Defendants were joint employers. (*See* ECF 64, Moving Hotel Defs.' Mem. at 16.) However,

a significant majority of the cases cited by the Hotel Defendants in support of their motion were

decided on motions for summary judgment, not on motions to dismiss. As this Court explained:

> In the context of Title VII, the Second Circuit has held that "[w]hether two related
> entities are sufficiently integrated to be treated as a single employer is generally
> a question of fact not suitable to resolution on a motion to dismiss." *Brown v.*
> *Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014); *see also Div. 1191 Amalgamated*
> *Trans. Union v. N.Y.C. Dep't of Educ.*, No. 13-CV-9112 (PKC), 2014 WL 4370724, at
> *9 (S.D.N.Y. Aug. 27, 2014) (stating that, because the joint employer inquiry under
> the NLRA is "factual in nature, it is not amenable to adjudication in a motion to
> dismiss"). The joint-employer inquiry is no less fact-intensive under the FLSA or
> NYLL than it is under Title VII or the NLRA. *See Chimbay v. Pizza Plus at Staten*
> *Island Ferry, Inc.*, No. 15-CV-2000 (RLE), 2016 WL 1064611, at *4 (S.D.N.Y. Mar. 14,
> 2016) (applying the maxim from *Brown* to FLSA claims).

*Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 16-CV-5735 (GHW), 2017 WL 2600051, at

*7 (S.D.N.Y. June 15, 2017).

While the SAC quotes liberally from the relevant caselaw and is thin on concrete factual

allegations about the nature of Plaintiffs' relationship with the Hotel Defendants, as discussed

below, the SAC does contain some allegations that, if proved, could support a finding that each

of the individual Hotel Defendants was a joint employer of certain Plaintiffs. That is sufficient at

this stage to support a recommendation against dismissing Plaintiffs' claims against the Hotel

Defendants for failure adequately to plead that the Hotel Defendants were Plaintiffs' joint

employers.

A. Legal Standards for Assessing FLSA and NYLL Liability

As a preliminary matter, a prerequisite to any FLSA or NYLL claim is that there be an

employment relationship:

The FLSA defines an employer to "include[ ] any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). The FLSA defines "employee" to "mean[ ] any individual employed by an employer" and "employ" to "include[ ] to suffer or permit to work." *Id.* §§ 203(e)(1), (g).

*Scalia*, 490 F. Supp. 3d at 775.

The language of the statute is extremely broad. "The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of [an] employer." *Herman v. RSR Sec. Serv., Inc.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Falk v. Brennan*, 414 U.S. 190, 195 (1973)); *see also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (noting that the definition of "employer" under the FLSA is one of "striking breadth"). "Congress expressed the FLSA's remedial purpose by writing broad definitions in sections 3(d), (e), and (g)." *Scalia*, 490 F. Supp. 3d at 786. It follows that the "joint employer doctrine must reflect the breadth of those provisions." *Id.* As this Court explained in *Scalia*:

> [T]he FLSA "expressly reject[s] the common-law definition of employment, which is based on limiting concepts of control and supervision." *Antenor v. D&S Farms*, 88 F.3d 925, 929 (11th Cir. 1996) (citations omitted). The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'" *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S. Ct. 1344 (citing 29 U.S.C. §§ 203(e), 203(g)). *Darden* noted this definition's "striking breadth[,]" which "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Id.*

*Scalia,* 490 F. Supp. 3d at 787.

B.  Caselaw Discussing Whether an Entity Is a Joint Employer

The Second Circuit has explained that "the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts, ... determined by reference not to isolated factors, but rather

upon the circumstances of the whole activity." *Barfield v. New York City Health & Hospitals Corp.,* 537 F.3d 132, 141 (2d Cir. 2008) (internal quotation marks and citations omitted); *see also Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730 (1947) (determination of whether defendants are plaintiffs' joint employers is to be based on "the circumstances of the whole activity"); *Baystate Alternative Staffing Inc. v. Herman,* 163 F.3d 668, 675 (1st Cir. 1998) ("[T]o determine whether an employment relationship exists for the purposes of federal welfare legislation, courts look not to the common law conceptions of that relationship, but rather to the 'economic reality' of the totality of the circumstances bearing on whether the putative employee is economically dependent on the alleged employer.") (citing *Aimable v. Long & Scott Farms*, 20 F.3d 434, 439 (11th Cir. 1994)).

As is relevant to this case, the Second Circuit has developed two tests for determining, based on economic realities, whether an entity is an employer under the FLSA, including a joint employer. *See Fernandez v. HR Parking Inc.*, 407 F. Supp. 3d 445, 451 (S.D.N.Y. 2019).[12] The first, which was set out in *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984), examines four factors to decide whether an employer exercised "formal control" over a worker. Under this test, a court considers whether an entity: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of

---

[12]     The NYLL's definition of employment is nearly identical to the FLSA's. As a result, courts in this Circuit "hold that the New York Labor Law embodies the same standards for joint employment as the FLSA." *Fernandez*, 407 F. Supp. 3d at 452 (quoting *Chen v. St. Beat Sportswear, Inc.,* 364 F. Supp. 2d 269, 278 (E.D.N.Y. 2005)). Accordingly, I analyze the question whether Plaintiffs have sufficiently alleged the Hotel Defendants were joint employers using caselaw concerning the FLSA notwithstanding my recommendation that the FLSA claims be dismissed as time barred.

employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 12 (citation omitted).

The second test, set forth in *Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 72-76 (2d Cir. 2003), considers "six nonexclusive and overlapping factors to determine if an employer had 'functional control' over workers." *Fernandez,* 407 F. Supp. 3d at 451. The case law explains "that the *Zheng* factors are most relevant in the context of subcontractor relationships," such as the one at issue here. *Id.* (quoting *Granda v. Trujillo*, No. 18-CV-3949 (PAE), 2019 WL 367983, at *5 (S.D.N.Y. Jan. 30, 2019) (internal quotation marks omitted)). Under *Zheng,* a court considers: (1) whether the premises and equipment of the alleged joint employers were used for the plaintiffs' work; (2) whether the direct employer had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which the plaintiffs performed a discrete job that was integral to the putative joint employers' process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the alleged joint employers or their agents supervised the plaintiffs' work; and (6) whether the plaintiffs worked exclusively or predominantly for the alleged joint employers. *See Zheng,* 355 F.3d at 72-76 (citing *Rutherford,* 331 U.S. at 724-25, 730).

C.  <u>Analysis Under *Carter* – Formal Control</u>

I begin by looking into allegations supporting the four *Carter* formal control factors.

1.  Power to Hire and Fire

The first factor is whether the Hotel Defendants had the ability to hire and fire Plaintiffs. *See Carter*, 735 F.2d at 12. Plaintiffs make a boilerplate allegation that Hotel Defendants had

that power. (*See* ECF 61, SAC ¶ 105.) But Plaintiffs at the same time allege that Defendant Shah recruits the Plaintiffs and requires them to sign employment contracts with Defendant Apple. (*See id.* ¶¶ 80-81.) They also allege that he "issues commands concerning at which Hotel Defendant the employee will be employed and for how long." (*Id.* ¶ 84.) Due to this last allegation, even affording Plaintiffs all reasonable inferences, this first factor is at best inconclusive.

    2.  Supervision and Control of Work Schedules or Conditions of Employment

The second *Carter* factor is whether the putative joint employers supervise and control the plaintiffs' work schedules or conditions of employment. *See Carter*, 735 F.2d at 12. "The more supervision and control an entity exercises, the more likely it is an employer." *Zheng*, 355 F.3d at 74-75.

As to schedules, Plaintiffs state that the Hotel Defendants set Plaintiffs' work schedules. (*See* ECF 61, SAC ¶ 92.) In support, Plaintiffs allege that at times, Defendants directed Plaintiffs to work off the clock, although they do not specify which Defendants provided this direction. (*See id.* ¶ 124.) Plaintiffs allege that the managers at each Hotel Defendant coordinated Plaintiffs' schedules to make sure that concierge services were provided around the clock to hotel guests. (*See id.* ¶ 98.) Taken together, these allegations suggest that the Hotel Defendants may have had at least some amount of control over Defendants' work schedules.

With respect to the supervision of the Plaintiffs' concierge duties on a daily basis, Plaintiffs make the boilerplate allegation that Plaintiffs "reported to, took orders from, and were subject to discipline by, managers and supervisors designated by the Hotel Defendants." (*Id.* ¶ 92.) However, Plaintiffs also allege more concretely that, when a Plaintiff would step

away from the concierge desk at a hotel, a Hotel Defendant's manager would complain that the Plaintiff should not leave the desk unattended; that some of the Hotel Defendants' managers required the Plaintiffs working at their hotels to stand for the entirety of their 12-hour shifts (*see id.* ¶ 4); that receptionists at the Hotel Defendants directed hotel guests to Plaintiffs for concierge services (*see id.* ¶ 95); and that Plaintiffs were expected to assist hotel guests with storing their luggage and had a key to the luggage room at the various hotels (*see id.* ¶ 100). These latter allegations suggest that the Hotel Defendants exercised a degree of supervision over Plaintiffs' activities while at work.

Accepting Plaintiffs' allegations as true, and according to them all reasonable inferences in their favor, I find that Plaintiffs have adequately alleged that the Hotel Defendants exercised some measure of control over Plaintiffs' schedules and conditions of employment. Accordingly, this factor weighs in favor of a finding of formal control.

### 3. Determination of the Rate and Method of Payment

*Carter* looks to whether the putative employer "determined the rate and method of pay for" the workers. *Carter*, 735 F.2d at 12. Plaintiffs allege in conclusory fashion that the Hotel Defendants controlled "the rate and method of compensation in exchange for Plaintiffs' services." (ECF 61, SAC ¶ 105.) However, they do not allege any facts supporting this conclusion, and the charts in the SAC reflect that many Plaintiffs worked for different Hotel Defendants during the same week (*see id.* ¶¶ 5-56), suggesting that it was Defendants Apple and Shah, and not the Hotel Defendants, who determined the rate and method of pay for Plaintiffs. *Cf. Rutherford,* 331 U.S. at 726, 730 (explaining that, although the slaughterhouse did not literally pay the workers, it effectively set the workers' wages because the workers did no meat boning

for any other firm). Accordingly, this factor favors the Hotel Defendants' position that Plaintiffs have not adequately alleged formal control.

### 4. Maintaining Employment Records

The final *Carter* factor is whether the Hotel Defendants maintained Plaintiffs' employment records. *See Carter*, 735 F.2d at 12. Plaintiffs allege that Defendants deliberately failed to maintain employment records. (*See* ECF 61, SAC ¶ 128.) While willful failure to comply with the requirements of the FLSA and the NYLL should not cut against a finding of formal control by a defendant who was responsible for tracking a plaintiff's hours, Plaintiffs here do not allege that the Hotel Defendants bore that responsibility. For example, Plaintiffs do not allege that the Hotel Defendants verified the number of hours they worked and then provided that information to the direct employer, as was the case in *Barfield,* 537 F.3d at 136. Thus, this factor favors a conclusion there was no formal control. *See, e.g., Fernandez v. HR Parking Inc.,* 407 F. Supp. 3d 445, 456 (S.D.N.Y. 2019).

\* \* \*

Only one of the *Carter* factors favors a finding that the Hotel Defendants were employers. Satisfaction of the *Carter* factors "may be sufficient to establish joint employment under the FLSA [but] it is not necessary to establish joint employment." *Zheng*, 355 F.3d at 79; *accord Greenawalt v. AT&T Mobility, LLC*, 642 F. App'x 36, 37 (2d Cir. 2016) ("[S]atisfying [the formal control] test is sufficient, but not necessary, to show joint employment."). Therefore, rather than determine whether Plaintiffs have sufficiently alleged formal control under *Carter*, I will examine the *Zheng* factors relating to functional control. *See, e.g., Fernandez,* 407 F. Supp. 3d at 456-06.

D.   Analysis Under *Zheng* – Functional Control

I next examine the allegations Plaintiffs have made in support of the *Zheng* factors.

1.   Location of Work and Use of Putative Joint Employers' Equipment

The first *Zheng* factor – location of the work and whether the workers used the alleged joint employer's equipment – "is relevant because the shared use of premises and equipment may support the inference that a putative joint employer has functional control over the plaintiffs'" work. *Zheng,* 355 F.3d at 72. Here, I find that Plaintiffs adequately plead that they worked on the Hotel Defendants' premises and used equipment, such as telephones and desks, provided by the Hotel Defendants. Plaintiffs include a chart indicating which Plaintiffs worked at which Hotel Defendants at which times. (*See* ECF 61, SAC ¶¶ 5-56.) Therefore, this factor supports a finding that Plaintiffs adequately pleaded that the Hotel Defendants exercised functional control over them.

2.   Ability for Direct Employer To Shift the Workers to Different Alleged Joint Employers

The second *Zheng* factor – "namely, whether the putative joint employees are part of a business organization that shifts as a unit from one putative joint employer to another – is relevant because a subcontractor that seeks business from a variety of contractors is less likely to be part of a subterfuge arrangement than a subcontractor that serves a single client." *Zheng,* 355 F.3d at 72. The allegation in the SAC relevant to this factor is that Defendants Shah and Apple directed individual Plaintiffs to work at different hotels at different times. (*See* ECF 61, SAC ¶ 84.) Defendants Apple and Shah provided workers to serve as concierges at many hotels.

Accordingly, this factor does not support a finding that Plaintiffs adequately pleaded functional control by the Hotel Defendants.

>   3.   Whether Workers Performed Discrete Tasks Integral to the Alleged Joint Employers' Business

The third *Zheng* factor is whether the Plaintiffs performed discrete tasks that were integral to the alleged joint employers' business. The *Zheng* Court explained:

> On one end of the spectrum lies the type of work performed by the boners in *Rutherford* – *i.e.,* piecework on a producer's premises that requires minimal training or equipment, and which constitutes an essential step in the producer's integrated manufacturing process. On the other end of the spectrum lies work that is not part of an integrated production unit, that is not performed on a predictable schedule, and that requires specialized skills or expensive technology.

*Zheng,* 355 F.3d at 73.

Some courts have "question[ed] whether … this factor translates well outside of the production line employment situation." *Moreau v. AirFrance,* 356 F.3d 942, 952 (9th Cir. 2004); *see also Jean-Louis v. Metro Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 134 (S.D.N.Y. Feb. 5, 2021) ("[T]he third factor might apply with somewhat less vigor where, as here, the parties are engaged in providing a service rather than manufacturing a product."). "Nonetheless, this factor should not be ignored here given that it has been applied by courts, including the Second Circuit, outside the production line context." *Fernandez*, 407 F. Supp. 3d at 457-58 (citing *Greenawalt*, 642 F. App'x at 39 (security guards) and *Vasto v. Credico (USA) LLC*, No. 15-CV-9298 (PAE), 2017 WL 4877424, at *14 (S.D.N.Y. Oct. 27, 2017) (canvassers making outreach to low-income individuals)).

The Second Circuit in *Zheng* counseled that, in evaluating this factor, Courts should look to both industry custom and historical practice:

Industry custom may be relevant because, insofar as the practice of using subcontractors to complete a particular task is widespread, it is unlikely to be a mere subterfuge to avoid complying with labor laws. At the same time, historical practice may also be relevant, because, if plaintiffs can prove that, as a historical matter, a contracting device has developed in response to and as a means to avoid applicable labor laws, the prevalence of that device may, in particular circumstances, be attributable to widespread evasion of labor laws.

*Zheng,* 355 F.3d at 73-74.

With respect to this factor, it is true that serving as a concierge requires minimal training or equipment, which tends to suggest that the third *Zheng* factor favors a finding of functional control. On the other hand, it seems doubtful that concierge services are a core part of the services offered by hotels, which primarily provide lodging. *Cf. Godlewska v. HDA*, 916 F. Supp. 2d 246, 264 (E.D.N.Y. 2013) (expressing doubt that providing home healthcare services is integral to the defendant city entities in finding that the third *Zheng* factor did not support a finding that the defendant city entities functionally controlled plaintiff home healthcare providers), *aff'd sub nom. Godlewska v. Hum. Dev. Ass'n, Inc.,* 561 F. App'x 108 (2d Cir. 2014); *Moreau,* 356 F.3d at 952 ("[W]e ... doubt that many of the functions ... such as food service or cargo transport, are actually 'integral' to a passenger airline."). Indeed, while luxury hotels typically have concierges on staff, budget hotels generally do not. There is no allegation in the SAC as to where on the spectrum of types of hotels the Hotel Defendants fall. Nor is there any allegation that providing concierge services is typical of hotels such as those owned by the Hotel Defendants.

Additionally, Plaintiffs' own SAC, which names 18 Hotel Defendants, suggests that outsourcing concierge services, at least among a certain class of hotels, is reasonably widespread. And there is no allegation in the SAC that outsourcing concierge services is a new

development intended to allow the Hotel Defendants to avoid compliance with the FLSA and the NYLL.

Under these circumstances, I find that Plaintiffs' allegations as to the third *Zheng* factor are inconclusive.

    4.    Whether the Staffing Contracts Could Pass from One Subcontractor to Another Without Material Changes

The fourth *Zheng* factor examines whether the staffing contracts could pass from one subcontractor to another without material changes. This factor asks "whether, if the putative joint employer hired one contractor rather than another, the *same* employees would continue to do the *same* work in the *same* place." *Fernandez,* 407 F. Supp. 3d at 459 (internal quotation marks omitted) (emphasis in original)). This factor raises the issue of subterfuge: if the Plaintiffs could change their direct employer from Defendant Apple to another concierge staffing agency without any material changes to their relationships with the Hotel Defendants at whose premises they worked, it would suggest that the relationship with Defendant Apple, the ostensible direct employer, was a mere subterfuge to allow the Hotel Defendants to avoid compliance with the FLSA and the NYLL. "Where, on the other hand, employees work for an entity (the purported joint employer) only to the extent that their direct employer is hired by that entity, this factor does not in any way support the determination that a joint employment relationship exists." *Zheng*, 355 F.3d at 74.

As to this factor, Plaintiffs allege that if the relationship between a particular Hotel Defendant and Defendants Shah and Apple soured, a plaintiff who had been working at that hotel could be hired directly by the hotel. (*See* ECF 61, SAC ¶ 91.) However, there is no allegation that this ever happened. Nor do Plaintiffs allege they could have worked or did work

at the same hotels through another concierge staffing service. Plaintiffs' allegations support a conclusion that they worked for the Hotel Defendants only to the extent their direct employer was hired by the Hotel Defendants. I therefore find that this factor cuts against a finding of functional control.

### 5. Degree of Supervision by Alleged Joint Employers

The fifth *Zheng* factor is the degree of supervision provided by the alleged joint employers. "The inquiry under this factor is largely the same as the inquiry under the second formal control factor and is the most relevant factor in determining whether a purported joint employer exercises functional control over plaintiffs." *Martin v. Sprint United Mgmt.*, 273 F. Supp. 3d 404, 433 (S.D.N.Y. 2017) (internal quotation marks omitted). As noted above, Plaintiffs' factual allegations in the SAC support a conclusion that the Hotel Defendants exercised some degree of control over Plaintiffs. Accordingly, this factor counsels in favor of a finding of functional control by the Hotel Defendants over Plaintiffs.

### 6. Whether Plaintiffs Worked Predominantly or Exclusively for the Alleged Joint Employers

The final *Zheng* factor is whether Plaintiffs worked predominantly or exclusively for the alleged joint employers. In situations where an individual works predominantly or exclusively for one alleged joint employer:

> [T]he joint employer may *de facto* become responsible, among other things, for the amount workers are paid and for their schedules, which are traditional indicia of employment. On the other hand, where a subcontractor performs merely a majority of its work for a single customer, there is no sound basis on which to infer that the customer has assumed the prerogatives of an employer.

*Zheng,* 355 F.3d at 75.

Here, Plaintiffs allege that once they started a shift for one of the Hotel Defendants, they worked "primarily and exclusively" (they do not specify which) for that Hotel Defendant. (ECF 61, SAC ¶¶ 89, 93.) However, Plaintiffs do not allege that each of them spent his or her time primarily or exclusively working for a particular Hotel Defendant. The charts included by Plaintiffs in the SAC indicate that some Plaintiffs worked nearly exclusively for one Hotel Defendant during any given period of time and others worked for multiple Hotel Defendants. (*See id.* ¶¶ 5-56.) Based on the foregoing, the sixth *Zheng* factor is inconclusive.

\* \* \*

Two of the *Zheng* factors favor a finding that the Hotel Defendants were joint employers, two other factors are inconclusive, and two cut against such a finding. "While it is not a question of numbers, the Second Circuit has upheld jury verdicts finding joint employment when 'as many as three *Zheng* factors weighed against joint employment as a matter of law.'" *Fernandez*, 407 F. Supp. 3d at 460 (quoting *Greenawalt*, 642 F. App'x at 40) (internal quotation marks omitted). In *Fernandez*, the Court denied the defendants' summary judgement motion on the ground that only one *Carter* factor and one *Zheng* factor weighed against a finding that the defendants were joint employers. *See id.* at 460-61. Under the circumstances, I find that Plaintiffs' allegations, while far from robust, support a finding that the Hotel Defendants exercised functional control over Plaintiffs and that Plaintiffs have adequately alleged that the Hotel Defendants were their joint employers.[13] Accordingly, Plaintiffs' NYLL claims should not be dismissed for failure to plead the Hotel Defendants were joint employers.

---

[13] For entities that do not meet the joint employer test, courts in this District have applied the "single integrated enterprise" test to "assess whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes." *Jianjun Chen,* 2017

## IV.    The Moving Hotel Defendants Are Not Exempt Under the Taxicab Exception to FLSA and the NYLL

The Moving Hotel Defendants argue Plaintiffs' claims under the FLSA and the NYLL

should be dismissed pursuant to Rule 12(b)(6) because the Hotel Defendants were not

obligated to pay Plaintiffs overtime as a result of the taxicab exemption to the FLSA and the

NYLL. (*See* ECF 64, Moving Hotel Defs.' Mem. at 25-27.) While Plaintiffs allege that Apple is an

agency that supplies "concierge and transportation services" to the Hotel Defendants, no

Plaintiff is alleged to have been a driver; all Plaintiffs are alleged to have provided concierge

services. (*See* ECF 61, SAC ¶¶ 98-101.) Therefore, the taxicab exemption is inapplicable.

## V.    Plaintiffs' Breach of Contract Claims Should Be Dismissed

The Moving Hotel Defendants argue that Plaintiffs' breach of contract claims should be

dismissed under Rule 12(b)(6) because the Hotel Defendants were not parties to Plaintiffs'

employment contracts and because the contract claims are preempted by the FLSA. (*See* ECF

64, Moving Hotel Defs.' Mem. at 30-31). Plaintiffs allege that "Defendant Shah makes them

execute a contract that imposes various rules, duties and obligations on them." (ECF 61, SAC ¶

WL 2600051, at *6 (quoting *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (quotation marks omitted) (collecting cases)). Under that test, "courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Jianjun Chen*, 2017 WL 2600051, at *6 (quoting *Juarez,* 29 F. Supp. 2d at 367) (quotation marks omitted)). Plaintiffs allege in the alternative that "each individual Hotel Defendant together with Defendant Shah and Defendant Apple Commuter Inc. constitute a single employer of the Plaintiffs." (ECF 61, SAC ¶ 106.) This allegation is impermissibly conclusory. Plaintiffs plead no facts supporting a conclusion that Defendants had interrelated operations, centralized control over labor relations or common ownership, as would be required to adequately plead that Defendants constituted a single integrated enterprise. *See Apolinar v. R.J. 49 Rest., LLC,* No. 15-CV-8655 (KBF), 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016). As a result, the Hotel Defendants would not be considered Plaintiffs' employers under the single integrated employer test.

81.) Plaintiffs never allege that the Hotel Defendants were parties to their employment contracts with Defendants Apple and Shah or that the Hotel Defendants otherwise were obligated to perform under those contracts. Accordingly, Plaintiffs' breach of contract claims against the Hotel Defendants fail. *See, e.g., Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*, No. 16-CV-3787 (DAB), 2017 WL 2304302, at *2 (S.D.N.Y. May 18, 2017) ("[I]t is black letter law that non-parties ordinarily cannot be held liable for a breach of contract."); *Ixe Banco, S.A. v. MBNA Am. Bank, N.A.,* No. 07-CV-0432 (LAP), 2008 WL 650403, at *12 (S.D.N.Y. Mar. 7, 2008).

In addition, "district courts have consistently held that because the FLSA is a comprehensive remedial scheme, state common law claims based on the same facts may present an obstacle to fulfilling this remedial scheme by allowing private plaintiffs to circumvent the power of the Secretary of Labor to terminate a private right of action otherwise allowable under the FLSA as set forth in 29 U.S.C. § 216(c)." *Contrera v. Langer*, 314 F. Supp. 3d 562, 571-72 (S.D.N.Y. 2018) (citing *Acevedo v. WorkFit Med. LLC*, No. 14-CV-06221 (EAW), 2014 WL 4659366, at *13-14 (W.D.N.Y. Sept. 17, 2014) and *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.,* 770 F. Supp. 2d 497, 532 (E.D.N.Y. 2011)). As a result, state common law causes of action are preempted when "the FLSA and common law claims are grounded in the same facts." *Contrera,* 314 F. Supp. 3d at 571-72 (citing *Chen v. St. Beat Sportswear, Inc.,* 364 F. Supp. 2d 269, 293 (E.D.N.Y. 2005) and *Acevedo*, 2014 WL 4659366, at *14).

The FLSA permits plaintiffs to recover unpaid overtime and spread of hours wages. *See* 29 U.S.C. § 201, *et seq.* "With respect to non-overtime wages, however – commonly referred to as 'straight time' – '[t]he FLSA allows recovery for unpaid straight time only up to the minimum wage rate.'" *Contrera*, 314 F. Supp. 3d at 572 (quoting *Soto v. Armstrong Realty Mgmt. Corp.*,

No. 15-CV-9283 (AJN) (JCF), 2016 WL 7396687, at *2 (S.D.N.Y. Dec. 21, 2016)); *see also Kernes v. Glob. Structures, LLC*, No. 15-CV-0659 (CM) (DF), 2016 WL 880199, at *3 (S.D.N.Y. Mar. 1, 2016). The FLSA preempts a plaintiff's breach of contract claim for "straight time" to the extent the rate is less than or equal to the minimum wage. *See, e.g., Contrera*, 314 F. Supp. 3d at 572. Here, Plaintiffs do not allege any contractual entitlement to more than the minimum wage. Thus, Plaintiffs' breach of contract claims against all Defendants except Apple and Shah should be dismissed because they are entirely preempted by the FLSA. *See id.; see also Sosnowy v. A. Perri Farms, Inc.,* 764 F. Supp. 2d 457, 470 (E.D.N.Y. 2011) (dismissing breach of contract and unjust enrichment claims seeking overtime compensation as preempted by the FLSA).

## VI.     Plaintiffs' Unjust Enrichment Claims Should Be Dismissed

The Moving Hotel Defendants also argue that Plaintiffs' unjust enrichment claims should be dismissed under Rule 12(b)(6) because they are preempted by the FLSA. (S*ee* ECF 64, Moving Hotel Defs.' Mem. at 30-31.) Plaintiffs' unjust enrichment claims, like their breach of contract claims, are based on the same facts as their FLSA claims. As a result, Plaintiffs' unjust enrichment claims against all Defendants except Apple and Shah should be dismissed as being preempted by FLSA. *See Sosnowy,* 764 F. Supp. 2d at 470.

## VII.    Plaintiffs' Collective Action and Class Action Allegations Should Not Be Dismissed

The Moving Hotel Defendants argue that Plaintiffs' collective action and class action allegations are too conclusory and should therefore be dismissed under Rule 12(b)(6). (*See* Moving Hotel Defs.' Mem. at 27-30.) *Iqbal* and *Twombly* do not "require dismissal of class and collective action allegations in an otherwise legally sufficient complaint." *Hughes v. Getronics Wang LLC*, No. 07-CV-10356 (LAK), 2008 WL 2778885, at *1 (S.D.N.Y. July 8, 2008). The

contention that this "is not a proper case for allowing [Plaintiffs] to proceed on behalf of a class or to permit a collective action" is appropriately "considered in the context of a class or collective action determination" after "the completion of class-related discovery on a properly briefed and supported motion." *Id.*

## VIII. Leave To Amend

As a general matter, leave to amend should be "freely give[n] ... when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, however, Plaintiffs have already amended their complaint twice. Before they filed the SAC, Magistrate Judge Katharine H. Parker warned them that there would not be further opportunities to amend. (*See* ECF 55, 2/21/23 Tr. at 43-48, 50.) Plaintiffs have not asked for leave to replead in the event any of their claims are dismissed, and therefore have not explained how they would cure any of the flaws in the SAC identified by the motion to dismiss and this Report and Recommendation. A plaintiff is not necessarily entitled to amend when he has not shown that the defects in the complaint can be cured. *See Porat v. Lincoln Towers Cmty. Ass'n,* 464 F.3d 274, 276 (2d Cir. 2006) (per curiam). Under the circumstances, I therefore respectfully recommend that Plaintiffs not be permitted to replead again.

Additionally, leave to amend should be denied where it would be "futile," and where the "plaintiff cannot cure the deficiencies in his pleadings to allege facts sufficient to support his claim." *Onibokun v. Chandler*, 749 F. App'x 65, 67 (2d Cir. 2019). Here, Plaintiffs cannot reformulate their NYLL claims involving work performed before August 23, 2015 in a way that would make those claims timely, and so repleading those claims would be futile. *See Page v. Ellenoff Grossman & Schole LLP*, No. 22-CV-4453 (VEC) (JLC), 2023 WL 4841916, at *4 (S.D.N.Y.

July 28, 2023) ("Granting leave to amend in this case would be futile because, even assuming the facts set forth in the [complaint] and in [Plaintiff's] briefing, Plaintiff's claims are barred by the three-year statute of limitations."). Nor could Plaintiffs reformulate their common law claims in a way that they are not preempted, and so any attempt at repleading those claims would be futile. *See Myrieckes v. Woods*, No. 08-CV-04297 (GBD) (THK), 2009 WL 884561 at *7 (S.D.N.Y. Mar. 31, 2009) (denying leave to amend because re-pleading preempted claim is futile).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the motion to dismiss be GRANTED IN PART and DENIED IN PART as to all Defendants except Defendants Shah and Apple. Specifically, I respectfully recommend that, as to all Defendants except Defendants Shah and Apple:

(1) Plaintiffs' FLSA claims should be dismissed with prejudice as time barred;

(2) Plaintiffs' NYLL claims should be allowed to proceed to the extent they involve work performed on or after August 23, 2015, and dismissed with prejudice to the extent they involve work performed before August 23, 2015; and

(3) Plaintiffs' claims for breach of contract and for unjust enrichment be dismissed with prejudice.

Dated: New York, New York
       January 23, 2024

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Woods.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).