UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAKHA ABULADZE, et al.,[1]

Plaintiffs,

-v-

APPLE COMMUTER, INC., et al.,

Defendants.

22 Civ. 8684 (MMG) (RFT)

**REPORT & RECOMMENDATION**
**OPINION & ORDER**

**TO THE HONORABLE MARGARET M. GARNETT, UNITED STATES DISTRICT JUDGE:**

Pending before the Court is Plaintiffs' sixth motion for preliminary approval of a class action settlement (the "Settlement Agreement") between Plaintiffs and nine Defendants (the "Settling Hotel Defendants")[2] and provisional class certification, for settlement purposes only,

---

1 The 26 Plaintiffs are: Kakha Abuladze; Erkegul Alshimbay; Temurbek Amonov; Albert Artabaev; Olesya Balakireva; Parviz Bashirov; Ketevan Chachua; Sayana Domshoeva; Natia Duduchava; Giorgi Gabisonia; Alisher Jabbarov; Ilya Kalpakbayeva; Nadezhda Khaltanova; Beka Khipashvili; Natalia Lapina; Anuki Lomidze; Gvantsa Mierzejewski a/k/a Christina Margalitashvili; Chingiz Mirzamseitov; Irina Mitrokhina; Aidar Orynbekov; Valentina Pokrovskaia; Nursulu Taukebayeva; Dzerassa Temiraeva; Akzharkyn Yedrissova; Tamar Zabakhidze; and Anna Tcebekova.

2 The Settling Hotel Defendants are the nine defendant hotel entities that have appeared in this matter and have continued litigating: (1) Edison Management Co. LLC a/k/a Edison Hotel; (2) 237 West 54 Owner LLC a/k/a Hilton Garden Inn (54); (3) HHLP 52 Lessee LLC a/k/a Hilton Garden Inn (52); (4) Brisam Management DE LLC a/k/a Holiday Inn Chelsea; (5) Patel Khanbudhai/Comfort Inn a/k/a Comfort Inn Chelsea/Heritage Hotel; (6) Wolcott Hotel Co. a/k/a Wolcott Hotel; (7) S&G Hotel Corp. a/k/a St. James Hotel; (8) Eros Management & Realty LLC a/k/a TRYP by Wyndham; and (9) Executive Le Soleil New York LLC a/k/a Executive Hotel Le Soleil New York. These entities have appeared and are active in this matter.

The original complaint named 46 additional defendants. One (Commack New York Hotel Limited Partnership) was voluntarily dismissed without prejudice on November 28, 2022. (*See* ECF 27, Stip. of Dismissal.) Twenty-six "XYZ Corp." and "Doe" defendants and eight named defendants ((1) Comfort Inn a/k/a Comfort Inn Times Square; (2) Imperial Hotel LLC a/k/a Imperial Court

pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Sixth Motion"). (*See* ECF 375.) Plaintiffs' only remaining claims against the Settling Hotel Defendants are for violation of the minimum wage and overtime provisions of the New York Labor Law ("NYLL"). (*See* ECF 82, Order; ECF 308, Order.) Plaintiffs seek to certify a class defined as follows:

> Plaintiffs and all individuals who were hourly, non-exempt employees of Apple Commuter Inc., Hotel Concierge Express Inc., Biren J. Shah, or any related entity associated or affiliated with Apple Commuter Inc., Hotel Concierge Express, Inc., or Biren J. Shah, who expressly performed services for any such entity or individual at the locations owned and/or operated by the Hotel Defendants during the Settlement Period.

(ECF 375, Sixth Motion at 1.) The Settlement Period is defined as April 7, 2016 through present (the "Settlement Period"). (*See* ECF 376, Pls.' Fifth Mem. at 7.) Plaintiffs further request that the Court appoint Kakha Abuladze as class representative; appoint Plaintiffs' counsel as class counsel; approve the Settlement Agreement as fair, reasonable, adequate, and in the best interest of the

---

Hotel; (3) Alphonse Hotel Corp. a/k/a Hotel Carter; (4) RPH Hotels 51 Street Owner LLC a/k/a Hampton Inn Times Square North; (5) New Generation Management Corp. a/k/a Best Western Plus Plaza Hotel; (6) Gemini 37 W. 24 Street LLC a/k/a Wyndham Garden; (7) Wyndham Hotel Management, Inc.; and (8) The Chetrit Group LLC) were voluntarily dismissed without prejudice on December 19, 2023. (*See* ECF 75, Notice of Voluntary Dismissal.) Defendant CDL Hotels USA Inc. a/k/a Millennium Hilton was voluntarily dismissed without prejudice on December 21, 2023. (*See* ECF 78.)

The eight other hotel entities that were named as defendants either never appeared or have stopped participating in this litigation: (1) PNY III LLC a/k/a Hilton Manhattan/Westgate; (2) HHLP Duo Three Lessee LLC a/k/a Holiday Inn Express; (3) New Generation Management Corp. a/k/a La Quinta Hotel Fifth Avenue; (4) The Shoreham LLC a/k/a Shoreham Hotel; (5) Hampton Inn a/k/a Hampton Inn Times Square South; (6) New York Marketing INC a/k/a NYMA; (7) Hamayoon Moosazadeh and Michael Diederich a/k/a Hotel at Times Square; and (8) HHLP Duo Two Lessee LLC a/k/a Candlewood Suites (together, the "Non-Appearing Parties"). Plaintiffs have started default judgment proceedings against the Non-Appearing Parties. (*See* ECF 257-70, 281, 306.) And Plaintiffs have separately settled on a non-class basis with the remaining two Defendants: Biren J. Shah and Apple Commuter Inc. ("Apple") (together, Shah and Apple are the "Apple Defendants"). (*See* ECF 349, Joint Letter; ECF 362, Stipulation of Voluntary Dismissal.)

class members; and authorize mailing of the proposed form of notice to potential members of the proposed class. (*See id*.) Settling Hotel Defendants filed a letter on the docket indicating that they do not oppose the Fifth Motion. (*See* ECF 377, Hotel Defs.' Letter.)

Having reviewed the submissions in connection with the Fifth and Sixth Motions, and for the reasons set forth below, I respectfully recommend that Your Honor **GRANT** the Sixth Motion (ECF 375).[3] Plaintiff's fifth motion for provisional class certification (the "Fifth Motion") (ECF 370) is deemed withdrawn.

## I.

## BACKGROUND

### A. Factual Background

I draw the factual background from the operative complaint, which is the second amended complaint (the "SAC"). (*See* ECF 61, SAC.) Defendant Shah owned and operated Defendant Apple, which held itself out as a provider of transportation and concierge staffing services for hotels throughout New York City, including hotels owned and operated by Settling Hotel Defendants. (*See id.* ¶ 3.)[4] Apple Defendants hired newly arrived immigrants, including Plaintiffs, to provide the concierge staffing services and compelled them to work five to seven days per week and more than 12 hours per day, for compensation of five dollars per hour, which was below the relevant

3 A magistrate judge does not have authority to issue orders on Rule 23 class certification motions. *See* 28 U.S.C. § 636(b)(1)(A). However, as Your Honor has done here, a district judge may designate a magistrate judge to make recommendations for the disposition of a Rule 23 class certification motion. *See* 28 U.S.C. § 636(b)(1)(B).

4 The SAC restarts its numbering after paragraph 8 and includes two paragraphs designated as each number from 1 to 8. Unless otherwise indicated, citations in this report and recommendation are to the first instances of each such paragraph.

minimum wage, with no overtime pay and no "spread of hours" pay. (*See id.* ¶¶ 4, 6, 8, 85, 118-23.) Plaintiffs were not permitted to take personal or sick days and did not receive any benefits. (*See id.* ¶ 85.) Defendant Shah made Plaintiffs execute an employment contract but did not provide them with copies. (*See id.* ¶ 81.) Defendant Shah "issue[d] commands concerning at which Hotel Defendant the employee will be employed and for how long." (*Id.* ¶ 84.)

Plaintiffs worked at the hotels owned and operated by Settling Hotel Defendants, and Plaintiffs could not be distinguished from other hotel workers. (*See id.* ¶¶ 4, 88.) Settling Hotel Defendants provided Plaintiffs with materials and equipment, such as desks, telephones, office supplies and uniforms, which the Plaintiffs used to do their jobs. (*See id.* ¶¶ 88, 97.)

Settling Hotel Defendants "possessed substantial control over the policies and practices with respect to the employment and compensation of the Plaintiffs." (*Id.* ¶ 102.) Settling Hotel Defendants set Plaintiffs' work schedules and payment methods. (*See id*. ¶ 92.) At times, Plaintiffs were directed to work "off the clock," that is, not reporting the time they worked. (*Id.* ¶ 124.) The managers at each Settling Hotel Defendant coordinated Plaintiffs' schedules to make sure that concierge services were provided around the clock to hotel guests. (*See id.* ¶ 98.)

After Plaintiffs started their shifts for a particular Settling Hotel Defendant, they "belonged" to that hotel for the duration of their shifts. (*Id.* ¶ 89.) During a shift, each Plaintiff worked "predominantly" or "exclusively" for one Settling Hotel Defendant, which had "complete control" over that Plaintiff and his or her activities. (*Id.* ¶ 93.) Plaintiffs "reported to, took orders from, and were subject to discipline by, managers and supervisors designated by the [Settling] Hotel Defendants." (*Id.* ¶ 92.)

When a Plaintiff would step away from the concierge desk at a hotel, a Settling Hotel Defendant's manager would complain that the Plaintiff should not leave the desk unattended. Some of the Settling Hotel Defendants' managers required the Plaintiffs working at their hotels to stand for the entirety of their 12-hour shifts. (*See id.* ¶ 4.) Receptionists at Settling Hotel Defendants directed hotel guests to Plaintiffs for concierge services. (*See id.* ¶ 95.) Plaintiffs were also expected to help hotel guests store their luggage, and Plaintiffs had a key to the luggage rooms at the hotels owned and operated by Settling Hotel Defendants. (*See id.* ¶ 100.) If Plaintiffs objected to those demands, they were "badgered, ridiculed, and/or emotionally tormented with threats of blackmail." (*Id.* ¶ 86.)

Plaintiffs worked for specific Settling Hotel Defendants on a long-term basis. (*See id.* ¶ 93.) If the arrangement between a Settling Hotel Defendant and Apple Defendants broke down, that Settling Hotel Defendant could choose to continue to employ those Plaintiffs who had been working at its hotel. (*See id.* ¶ 91.) Settling Hotel Defendants "willfully" disregarded the requirements of the NYLL to keep complete and accurate time sheets and payroll records. (*Id.* ¶ 128.)

**B. Procedural Background**

On April 7, 2022, Plaintiffs filed a complaint in the Supreme Court, County of New York, alleging, among other things, violations of the Fair Labor Standards Act ("FLSA") and the NYLL and breach of contract. (*See* ECF 1, Notice of Removal ¶ 1; ECF 1-1 Ex. A – Summons and Compl.; ECF 55, 2/21/23 Tr. at 24.)

On August 11, 2022, Defendant Shah filed for Chapter 11 bankruptcy in the Bankruptcy Court for the Eastern District of New York. (*See* ECF 55, 2/21/23 Tr. at 25; *In re Shah*, Ch. 11 Case No. 22-BK-41938-ESS (Bankr. E.D.N.Y 2022).)

1. Initial Proceedings in this Court

On October 12, 2022, Defendants removed Plaintiffs' case to this Court. (*See* ECF 1, Notice of Removal.) On January 4, 2023, Plaintiffs filed an amended complaint seeking, among other things, recovery of unpaid wages. (*See generally* ECF 37, Am. Compl.)

On February 9, 2023, Magistrate Judge Katharine H. Parker held a pre-motion conference to discuss a motion to dismiss contemplated by certain Hotel Defendants. (*See generally* ECF 55, 2/21/23 Tr.)

On March 31, 2023, Defendant Apple filed a Chapter 11 bankruptcy petition in the Bankruptcy Court for the Eastern District of New York. *See In re Apple Commuter*, Ch. 11 Case No. 23-BK-41107-ESS (Bankr. E.D.N.Y. 2023). In light of the Chapter 11 filings by the Apple Defendants, Plaintiffs' case against those two Defendants was automatically stayed pursuant to 11 U.S.C. § 362. However, the matter was not stayed as to the other Defendants. *See In re Sklar*, 626 B.R. 750, 764 (Bankr. S.D.N.Y. 2021).

On May 4, 2023, Plaintiffs filed their SAC, which provided additional information about the dates on which each Plaintiff worked at each hotel entity's property as well as damages calculations for each Plaintiff. (*See* ECF 61, SAC ¶¶ 5-56.)[5]

5 This citation is to the second paragraphs 5-8.

2. The Motion To Dismiss the SAC

On June 9, 2023, certain Defendants filed a motion to dismiss the SAC and a supporting brief. (*See* ECF 62, 6/9/23 Notice of Mot.; ECF 64, 6/9/23 Defs.' Mem.)[6] Those Defendants argued that Plaintiffs' FLSA claims, NYLL claims, and common law claims should be dismissed; they asked the Court to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims in the event the Court dismissed the federal claims. On November 15, 2023, the referral to Magistrate Judge Parker was reassigned to me.

On November 29, 2023, I issued an order that, among other things, directed Plaintiffs to address the argument that the SAC did not provide sufficient information to allege an employment relationship between Plaintiffs and four of the Defendants (Millennium Hilton, Hilton Manhattan/Westgate, Hilton Garden Inn (52), and Hilton Garden Inn (54)). (*See* ECF 68, Order.) Plaintiffs responded to the argument that the SAC did not sufficiently allege an employment relationship between Plaintiffs and those four Defendants by submitting a declaration providing additional information about the locations where certain Plaintiffs worked (*see* ECF 74, Declaration of Vano I. Haroutunian ("First Haroutunian Decl.") ¶¶ 6-21), and Plaintiffs also submitted a separate Notice of Voluntary Dismissal Pursuant to Rule 41(a)(1)(A)(i), dismissing 35 defendants without prejudice. *See supra* note 2.

I issued a report and recommendation that the motion to dismiss the SAC should be granted in part and denied in part, in that the claims against the Settling Hotel Defendants and the

[6] The June 9, 2023 Motion to Dismiss was filed on behalf of NYMA, Hotel at Times Square, the Millennium Hilton, and six of the Settling Defendants: Executive Hotel, Wolcott Hotel, Edison Hotel, Holiday Inn Chelsea, Hilton Garden Inn (52), and Hilton Garden Inn (54). (*See* ECF 63, 6/9/23 Notice of Mot.)

Non-Appearing Parties under the FLSA, under the NYLL for work performed before August 23, 2015, and for breach of contract and unjust enrichment should be dismissed with prejudice, but that the NYLL claims for worked performed on or after August 23, 2015 should be allowed to proceed. (*See generally* ECF 81, Report and Recommendation.) The basis for recommending dismissal with prejudice of the FLSA claims was that those claims were time barred. (*See id.*) The report and recommendation was adopted in its entirety by the Court on February 27, 2024, and so only the NYLL claims for work performed on or after August 23, 2015 remained against Settling Hotel Defendants and the Non-Appearing Parties. (*See* ECF 82, Order.) The Defendants that were actively litigating the case at that time filed answers. (*See* ECF 86; ECF 89; ECF 90; ECF 94; ECF 153; ECF 194; ECF 209; ECF 210; ECF 219; ECF 223.)

3. Apple Defendants' Answer and Affirmative Defenses

The automatic stay ended as to Defendant Shah on January 11, 2024, *Shah,* No. 22-BK-41938-ESS, Docket No. 56, and as to Defendant Apple on March 4, 2024, *Apple Commuter*, No. 23-BK-41107-ESS, Docket No. 37. Apple answered the SAC on March 25, 2024 (ECF 180, 181), and Shah answered the SAC on April 15, 2024 (ECF 200). The Apple Defendants each interposed the affirmative defense that Plaintiffs' claims were barred by the applicable statutes of limitations. (*See* ECF 180, Apple Ans. at 16; ECF 200, Shah Ans. at 16.) On February 24, 2025, I issued a report and recommendation that the FLSA claims against the Apple Defendants should be dismissed as time barred. (*See* ECF 299, Report and Recommendation.) Your Honor adopted that report and recommendation. (*See* ECF 308, Order.)

4. <u>Plaintiffs' Proposed Default Judgments Against Non-Appearing Defendants</u>

On February 14, 2024, I ordered Plaintiffs to move by March 8, 2024 for an order to show cause why default judgment should not be entered against eight Defendants who had not appeared in the matter at that time. (*See* ECF 84, Order.)[7] On March 5, 2024, Plaintiffs filed Proposed Clerk's Certificates of Default and supporting declarations as to each of those Defendants as well as a ninth defendant, Defendant La Quinta Hotel Fifth Avenue. (*See* ECF Nos. 97-138, 141, 143, 145.) The Clerk of Court issued Certificates of Default on March 6, 2024 as to those nine Defendants. (*See* ECF Nos. 139-40, 142, 144, 147-48, 150-52.) On March 8, 2024, Plaintiffs filed a proposed order to show cause, supporting declaration and exhibits, a statement of damages, and a proposed default judgment order as to each of these defendants. (*See* ECF Nos. 155-66.)

On March 14, 2024, attorneys representing Defendant S&G appeared for the first time and requested an extension to answer the SAC. (*See* ECF Nos. 167-69.) On March 26, 2024, Defendant S&G moved to vacate the Clerk's Certificate of Default entered against S&G Hotel. (*See* ECF 182.) On April 4, 2024, I found that there was good cause to set aside the Clerk's Certificate of Default as to Defendant S&G. (*See* ECF 189, Op. & Order.)

On April 18, 2024, Plaintiffs filed a Proposed Findings of Fact and Conclusions of Law ("Pls.' PFOF") and supporting calculations. (*See* ECF 195, Pls.' PFOF.)

---

[7] Those Defendants were: (1) PNY III LLC a/k/a Hilton Manhattan/Westgate; (2) HHLP Duo Three Lessee LLC a/k/a Holiday Inn Express; (3) Patel Khanbudhai/Comfort Inn a/k/a Comfort Inn Chelsea/Heritage Hotel; (4) (8) Eros Management & Realty LLC a/k/a TRYP by Wyndham; (5) S&G Hotel Corp. a/k/a St. James Hotel; (6)The Shoreham LLC a/k/a Shoreham Hotel; (7) Hampton Inn a/k/a Hampton Inn Times Square South; and (8) HHLP Duo Two Lessee LLC a/k/a Candlewood Suites.

On May 15, 2024, attorneys for Defendant Comfort Inn Chelsea/Heritage Hotel appeared for the first time in this matter and filed a proposed stipulation and order vacating the Clerk's Certificate of Default against Comfort Inn Chelsea/Heritage Hotel (ECF 202), which I so ordered on May 17, 2024. (*See* ECF 206.)

On June 13, 2024, attorneys for Defendant Eros Management & Realty LLC appeared for the first time in this matter. (*See* ECF 214.) On June 14, 2024, Defendant Eros Management & Realty LLC filed a proposed stipulation and order vacating the Clerk's Certificate of Default against Eros Management & Realty LLC (ECF 216), which I so ordered the same day. (*See* ECF 217.)

On July 18, 2024, the firm representing Defendants Hotel at Times Square and NYMA filed a motion seeking to withdraw as counsel for both defendants. (*See* ECF Nos. 226-27.) On July 23, 2024, I granted the motion and ordered Defendants Hotel at Times Square and NYMA to have replacement counsel appear on their behalf in this action by September 5, 2024. (*See* ECF 232.) On September 25, 2024, after affording Defendants Hotel at Times Square and NYMA an extension (ECF 241), I ordered Plaintiffs to initiate default proceedings against Defendants Hotel at Times Square and NYMA, after replacement counsel failed to appear on their behalf. (*See* ECF 242.) On November 27, 2024 and December 2, 2024, Plaintiffs filed motions for default judgment, Proposed Clerk's Certificates of Default and supporting declarations as to each of those Defendants. (*See* ECF Nos. 257-62, 264-70.) The Clerk of Court entered Certificates of Default against Defendants NYMA and Hotel at Times Square. (*See* ECF Nos. 263, 271.)

On December 6, 2024, I ordered Plaintiffs to file Amended Proposed Findings of Fact and Conclusions of Law, including information on Defendants Hotel at Times Square and NYMA and removing all references to Defendants S&G, Comfort Inn Chelsea/Heritage Hotel, and Eros

Management & Realty LLC. (*See* ECF 272, Order.) On January 15, 2025, Plaintiffs filed Amended Proposed Findings of Fact and Conclusions of Law ("APFOF") and exhibits in support, including the relevant Clerk's Certificates of Default and a statement of damages. (*See* ECF 281, APFOF.) On April 1, 2025, Plaintiffs filed a Second Amended Proposed Findings of Fact and Conclusions of Law ("SAPFOF"). (*See* ECF 306, SAPFOF.)

5. Plaintiffs Previous Motions for Class Certification

On August 15, 2024, Plaintiffs filed their original motion for class certification (the "First Motion") (ECF 234), supported by a memorandum of law and three declarations, including damages calculations for the class representatives and a proposed notice of class action (ECF 235, Pls.' First Mem.; ECF 236 Declaration of Natia Duduchava; ECF 237, Declaration of Tamar Zabakhidze; ECF 238 Second Declaration of Vano I. Haroutunian ("Second Haroutunian Decl.").). Plaintiffs, Settling Hotel Defendants, and Apple Defendants (collectively, "Settling Parties") subsequently participated in multiple mediation sessions and informed the Court that they had reached an agreement in principle on or around October 25, 2024. (ECF 247, Notice of Settlement.)

On November 8, 2024, Settling Parties informed the Court that they remained actively engaged in settlement discussions and that a framework was in place but that there were unresolved details. (ECF 251, Status Update.) On November 25, 2024, Settling Parties informed the Court that they had resolved their outstanding issues. (ECF 255, Status Update.) On January 3, 2025, Apple Defendants informed the Court that they did not agree with the settlement terms as "apparently understood by other parties." (ECF 275, Status Update.)

On January 24, 2025, Plaintiffs filed a motion to enforce a settlement agreement (the "Motion To Enforce"). (*See* ECF 282.) Plaintiffs' counsel tried to reach out to any potential class members whose names had been unknown when Plaintiffs filed the First Motion. (*See* ECF 319, Third Declaration of Vano I. Haroutunian ("Third Haroutunian Decl.") ¶ 14.) Plaintiffs' counsel "discovered that in addition to any potential Plaintiffs who were contacted before and advised [Plaintiff's counsel] that they did not want to be part of any collective or class action, there were no other parties or potential Plaintiffs interested in joining the lawsuit." (*Id*.) Plaintiffs' counsel became concerned that the proposed class could not meet the numerosity requirement of Rule 23(a) and therefore, on February 21, 2025, Plaintiffs withdrew the First Motion and the Motion To Enforce, and I so ordered the withdrawal of those motions on February 24, 2025. (*See* ECF 295, Mot. To Withdraw First Mot.; ECF 296, Mot. To Withdraw Mot. To Enforce; ECF 297, Order; ECF 319, Third Haroutunian Decl. ¶ 15.)

I ordered Plaintiffs and Apple Defendants to disclose to Settling Hotel Defendants the names of all known putative class members. (*See* ECF 314, Order; ECF 315, Order.) I thereafter encouraged Plaintiffs to file a motion for class certification that made any arguments Plaintiffs believed to be appropriate and set a briefing schedule should they file any motion. (*See* ECF 317, Order.)

Plaintiffs filed another motion for class certification on June 20, 2025 (the "Second Motion") (ECF 318); Apple Defendants filed a response in opposition to the Second Motion on July 2, 2025 (ECF 320); Settling Hotel Defendants filed a response in support of the Second Motion on July 7, 2025, arguing that class certification was appropriate (ECF 321); and Plaintiffs filed a reply on July 21, 2025 (ECF 324). Plaintiffs subsequently indicated an intention to withdraw the Second

Motion and refile a motion seeking certification for their remaining claims against Hotel Defendants (but not for their remaining claims against Apple Defendants). Plaintiffs filed another motion seeking certification of a class for their remaining claims against Hotel Defendants and supporting documentation (the "Third Motion"). (*See* ECF 325, Pls.' Third Motion; ECF 325-1, Fourth Declaration of Vano I. Haroutunian (the "Fourth Haroutunian Decl."); ECF 326, Pls.' Second Mem.) However, Plaintiffs did not withdraw the Second Motion. Accordingly, on October 24, 2025, I issued a report and recommendation that Your Honor should deny the Second Motion as moot. (*See* ECF 327, Report and Recommendation.)

I held a counsel-only settlement conference on November 5, 2025, during which counsel for Plaintiffs and Apple Defendants informed me that they expected to file a stipulation of dismissal by December 1, 2025 (ECF 330). On November 7, 2025, counsel for Settling Hotel Defendants filed a letter-motion on behalf of themselves and Plaintiffs, requesting additional time to negotiate a settlement agreement before Plaintiffs sought class certification and moving to withdraw Plaintiffs' Second and Third Motions for class certification. (*See* ECF 331.) I granted the parties' requests, withdrew my report and recommendation (ECF 327), and set a new deadline by which Plaintiffs would have to renew their motion for class certification. (*See* ECF 332, Order.)

On December 19, 2025, Plaintiffs filed a fourth motion for provisional class certification and supporting documentation (the "Fourth Motion"). (*See* ECF 338, Pls.' Fourth Mot.; ECF 338-1, Fifth Declaration of Vano I. Haroutunian ("Fifth Haroutunian Decl."); ECF 339, Pls.' Third Mem.) Following a settlement conference held on January 8, 2026, Plaintiffs were directed to withdraw the Fourth Motion and to refile a motion for class certification should the parties finalize a settlement. (*See* ECF 346, Order.)

On February 10, 2026, after multiple extensions, (*see* ECF Nos. 334, 336, 346, 350, 351, 354, 356, 360), Plaintiffs filed a Stipulation of Voluntary Dismissal pursuant to Rule 41(a)(1)(A)(i), dismissing Apple Defendants with prejudice, which is pending before Your Honor. (*See* ECF 362.)

6. Plaintiff's Fifth and Sixth Motions for Class Certification

On February 19, 2026, Plaintiffs filed a fifth motion for provisional class certification and supporting documentation (the "Fifth Motion") (ECF 370, Pls.' Fifth Mot.; ECF 371, Pls.' Fourth Mem.; ECF 372, Sixth Declaration of Vano I. Haroutunian ("Sixth Haroutunian Decl.")). On February 20, 2026, I directed Settling Hotel Defendants to file a letter on the docket indicating whether they planned to oppose Plaintiffs' Fourth Motion; I deemed the Fourth Motion (ECF 338) withdrawn. (*See* ECF 374, Order.)

On February 26, 2026, Plaintiffs filed a sixth motion for settlement approval and provisional class certification for settlement purposes only (the "Sixth Motion") (ECF 375). In support, Plaintiffs filed the Seventh Declaration of Vano I. Haroutunian ("Seventh Haroutunian Decl."), a proposed order, the proposed class notice, and a memorandum of law. (*See* ECF 375-1, Seventh Haroutunian Decl.; ECF 375-2 Proposed Order; ECF 375-3, Proposed Notice; ECF 376, Pls.' Fifth Mem.) That same day, Hotel Defendants filed a letter on the docket indicating that they did not oppose the Fifth Motion and that Plaintiffs had agreed to withdraw the Fifth Motion. (*See* ECF 377, Hotel Defs.' Letter.) Based on the representation that Plaintiffs had agreed to withdraw the Fifth Motion (ECF 377), I deem that motion to be withdrawn.

On May 4, 2026, I issued an order to supplement, requiring Plaintiffs to file the proposed Settlement Agreement on the docket for the Court's consideration as well as an amended proposed class action notice, as the proposed class action notice filed in support of the Fifth

Motion appeared to be a draft. (*See* ECF 378, Order.) On May 6, 2026, I issued a second order to supplement, directing Plaintiffs to file supporting documentation on the docket to address both the procedural and substantive fairness of the proposed Settlement Agreement. (*See* ECF 379, Order.) On May 7, 2026, I issued a third order to supplement, requiring Plaintiffs to file on the docket documents supporting the attorneys' fee request, including Plaintiffs' retainer agreements and counsel's billing records. (*See* ECF 380, Order.)

On May 20, 2026, Plaintiffs filed a complete copy of the proposed Settlement Agreement and amended proposed class action notice. (*See* ECF 384, Proposed Settlement Agreement; ECF 384-1, Proposed Notice.) On May 27, 2026, Plaintiffs filed a memorandum of law in support of the procedural and substantive fairness of the proposed settlement, as well as a declaration by counsel. (*See* ECF 385, Pls.' Sixth Mem.; ECF 385-1, Eighth Declaration of Vano I. Haroutunian ("Eighth Haroutunian Decl.").) On June 6, 2026, Plaintiffs filed another declaration by counsel supporting their fee request, as well as a copy of their billing records and the retainer agreements for 11 of the named Plaintiffs (nine were signed). (*See* ECF 387, Ninth Declaration of Vano I. Haroutunian ("Ninth Haroutunian Decl."); ECF 387-1, Billing Statement; ECF 387-2, Retainer Agreements.)[8] On June 29, 2026, I ordered Plaintiffs to make a supplemental filing by July 6, 2026 to (1) explain the basis for the modification provision contained in the Settlement Agreement and (2) to provide a list of any known affiliates of the Apple Defendants that they want to be encompassed in the list of employers of the class definition. (*See* ECF 388, Order.) Plaintiffs did not

[8] Counsel submitted copies of signed retainer agreements or signature pages for Plaintiffs Artabaev, Mitrokhina, Lomidze, Khubashvili, Mierzejewski, Yedrissova, Jabbarov, Khaltanova, and Tcebekova. (*See generally* ECF 387-2, Retainer Agreements.) Plaintiff submitted copies of unsigned retainer agreements for Plaintiffs Chechua and Lapina. (*See id.*) No retainer agreement was submitted for the remaining 15 Plaintiffs.

make the required filing. Therefore, I evaluate the Sixth Motion based on the filings received to date.

**II.**

**LEGAL STANDARD FOR CLASS CERTIFICATION UNDER RULE 23**

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores*, *Inc. v. Dukes*, 564 U.S. 338, 345 (2011).[9] "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Id.* at 348. The party seeking certification must show that:

> (1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy of representation].

Fed. R. Civ. P. 23(a).

In addition to meeting the requirements of Rule 23(a), a proposed class must be one of the types of classes listed in Rule 23(b). *See Wal-Mart Stores*, 564 U.S. at 345; *see also* Fed. R. Civ. P. 23(b). Plaintiffs have moved for class certification under Rule 23(b)(3), which permits class certification if the requirements of Rule 23(a) are met and (1) common questions of fact or law predominate over any individual questions, and (2) a class action is a superior method of efficiently and fairly adjudicating the matter. *See In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017); *see also* Fed. R. Civ. P. 23(b)(3). The Second Circuit also has "recognized an implied requirement of ascertainability in Rule 23[.]" *Petrobras Sec.*, 862 F.3d at 260.

[9] Unless indicated otherwise, this report and recommendation omits internal quotation marks, alterations, and citations from quoted text.

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores*, 564 U.S. at 350. A court may certify a class action only if it concludes, after "rigorous analysis," that the proposed class meets the requirements of Rule 23(a) and (b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The party seeking class certification must demonstrate each of the relevant Rule 23 requirements by a preponderance of the evidence. *See Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202 (2d Cir. 2008).

"If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast*, 569 U.S. at 34. "Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores*, 564 U.S. at 351. However, "in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement[.]" *In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). The court must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *Id.* The Court has discretion on questions of class certification, because "the district court is often in the best position to assess the propriety of the class . . . ." *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001).

A court may conditionally certify a class "for settlement purposes only (and for no other purpose and with no other effect upon this or any other action, including no effect upon this action should the [s]ettlement not ultimately be approved)." *E.g., Grant v. Warner Music Grp. Corp.*, No. 13-CV-4449 (PGG), 2015 WL 10846300, at *1 (S.D.N.Y. Aug. 21, 2015). Courts in this Circuit have explained that "[p]rovisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the

proposed [s]ettlement [a]greement, and setting the date and time of the final approval hearing." *Lora v. To-Rise, LLC,* 452 F. Supp. 3d 5, 10 (E.D.N.Y. 2019). To provisionally certify a settlement class, the Court must still determine that the threshold requirements for class certification set forth in Rule 23(a) have been met and that the proposed class falls into one of the categories outlined in Rule 23(b). *See Long v. HSBC USA Inc.,* No. 14-CV-6233 (HBP), 2015 WL 5444651, at *5 (S.D.N.Y. Sept. 11, 2015).

**III.**

**PROVISIONAL CLASS CERTIFICATION ANALYSIS**

**A. Class Certification Is Appropriate**

1. Numerosity

To provisionally certify a class, a court must conclude that the proposed class is so numerous that joinder of all its individual members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). "Impracticable does not mean impossible," and "[c]ourts have not required evidence of exact class size or identity of class members." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

In the Second Circuit, numerosity is presumed when a class consists of 40 or more members. *See Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 252 (2d Cir. 2011). However, "[d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers." *Robidoux*, 987 F.2d at 936 (2d Cir. 1993); *see also Trinidad v. Breakaway Courier Sys., Inc.*, No. 05-CV-4116 (RWS), 2007 WL 103073, at *4 (S.D.N.Y. Jan. 12, 2007) ("While there are no rigid numerical guidelines for determining impracticability of joinder, courts have observed that generally less than 21 is inadequate; more than 40 is adequate; and numbers in between 21 and 40 are given varying treatment."); *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 326 (S.D.N.Y. 2012).

Relevant considerations include "judicial economy arising from the avoidance of a multiplicity of actions, . . . financial resources of class members, [and] the ability of claimants to institute individual suits." *Robidoux*, 987 F.2d at 936; *see also Balverde v. Lunella Ristorante, Inc.,* No. 15-CV-5518 (ER), 2017 WL 1954934, at *5 (S.D.N.Y. May 10, 2017) (finding a proposed class of 38 individuals sufficiently numerous); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (citing cases certifying classes composed of 14 to 30 members and finding a proposed class of 28 individuals sufficiently numerous).

There are 26 named Plaintiffs; Plaintiffs assert that the precise number of putative class members is unknown at this time, but that it is reasonable for the Court to infer that there are at least 40 members of the putative class, based on the recollections of two named Plaintiffs who worked for Settling Hotel Defendants for a portion of the putative class period. (*See* ECF 376, Pls.' Fifth Mem. at 16.) Individuals who are part of the potential class may be considered in the numerosity analysis even if they did not sign up to be named Plaintiffs. *See Huang v. Shanghai City Corp*., No. 19-CV-7702 (LJL) 2022 WL 1468450, at *15 (S.D.N.Y. May 10, 2022) (rejecting the argument potential class members who declined to opt in to a FLSA collective action should be excluded from the analysis of numerosity and ruling that, "just because potential class members fail to join a FLSA collective action, it does not follow that they would also elect to opt-out of the Rule 23 class"). I therefore conclude that the putative class meets the numerosity requirement.

Even if the class is limited to the 26 named Plaintiffs, it would meet the numerosity requirement in light of the benefits of avoiding multiple lawsuits; the limited financial resources of the putative class members, which would limit their ability to bring individual suits; and potential fear of reprisal, which could deter them from bringing individual suits. *See Mangahas v. Eight*

*Oranges Inc*., No. 22-CV-4150 (LJL), 2024 WL 2801922, at *5 (S.D.N.Y. May 31, 2024). "[T]here is every reason to believe [that class members] lack the financial resources to independently participate in the litigation" and that their "fear of retaliation also supports numerosity."); *Carollo v. United Capital Corp.*, 528 F. Supp. 3d 37, 53 (N.D.N.Y. 2021) ("[T]he very nature of this case – an employer allegedly taking advantage of minimum-wage workers – also suggests that the proposed class may lack the financial capabilities to bring lawsuits individually.").

2. Commonality

There must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A question is common to the class if it is "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores Inc.*, 564 U.S. at 350. Commonality therefore "turns on the ability of the action to generate common answers apt to drive the resolution of the litigation." *Elisa W. v. City of New York*, 82 F.4th 115, 123 (2d Cir. 2023) (quoting *Wal-Mart*, 564 U.S. at 350). A single common question of fact or law suffices to satisfy this element. *See Wal-Mart*, 564 U.S. at 359. In particular, "[t]he fact that the amount of damages class members can recover – if any – may differ does not bear weight in the commonality inquiry." *Zivkovic v. Laura Christy LLC,* 329 F.R.D. 61, 70 (S.D.N.Y. 2018).

Courts in this Circuit routinely find that the Rule 23 commonality requirement is satisfied in wage and hour actions such as this one. *See, e.g., Chakma v. Sushi Katsuei, Inc*., No. 23-CV-7804 (KPF), 2025 WL 429730, at *4 (S.D.N.Y. Feb. 7, 2025) ("[A]ctions centering on wage and hour claims . . . are especially suited to class litigation – perhaps the most perfect questions for class treatment – despite differences in hours worked, wages paid, and wages due."). "In wage cases, the

commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Spencer v. No Parking Today, Inc*., No. 12-CV-6323 (ALC) (AJP), 2013 WL 1040052, at *15 (S.D.N.Y. Mar. 15, 2013), *adopted by* No. 12-CV-6323, 2013 WL 2473039, (S.D.N.Y. June 7, 2013).

Plaintiffs assert that their case includes common questions of law and fact, among others, as to whether Defendants violated the NYLL by: engaging in a pattern of not paying minimum wage compensation for all hours worked; engaging in a pattern of not paying overtime compensation for all hours worked in excess of 40 hours per week; and engaging in a pattern of not paying an extra hour's pay for the "spread of hours" worked. (*See* ECF 376, Pls.' Fifth Mem. at 17-18.) Courts in this District have found similar questions of law and fact to be sufficient to establish commonality. *See, e.g*., *Shahriar*, 659 F.3d at 252; *Zivkovic*, 329 F.R.D. at 66, 69-70; *Vargas v. Howard*, 324 F.R.D. 319, 325 (S.D.N.Y. 2018); *Murphy v. Lajaunie*, No. 13-CV-6503 (RJS), 2015 WL 4528140, at *4 (S.D.N.Y. July 24, 2015); *Megason v. Starjem Rest. Corp*., No. 12-CV-1299 (NRB), 2014 WL 113711, at *6-7 (S.D.N.Y. Jan. 13, 2014); *Schear v. Food Scope Am., Inc*., 297 F.R.D. 114, 124 (S.D.N.Y. 2014); *Mendez v. Pizza on Stone, LLC*, No. 11-CV-6316 (DLC), 2012 WL 3133547, at *2-3 (S.D.N.Y. Aug. 1, 2012). I therefore conclude commonality is present here.

3. <u>Typicality</u>

Rule 23(a)(3) requires that the class representatives have claims typical of those of the class members. *See* Fed. R. Civ. P. 23(a)(3). "To establish typicality under Rule 23(a)(3), the party seeking certification must show that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "The commonality and

typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). The Second Circuit has explained that "[t]he crux of both requirements is to ensure that maintenance of a class action is economical and that the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

In a wage case, the typicality requirement is satisfied where the named plaintiffs and proposed class members "were subject to the same general employment scheme," and their claims are based on "the same course of events and legal theory." *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 106 (E.D.N.Y. 2011). Typicality is present, even if there are factual differences among the claims, if the named plaintiffs allege that the defendants engaged in the same unlawful conduct toward them. *See Robidoux*, 987 F.2d at 937 ("[T]he typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

Plaintiffs propose Kakha Abuladze as the class representative. (*See* ECF 375-2, Proposed Order.) Abuladze worked for two of the Settling Hotel Defendants (Edison Hotel and Wolcott Hotel) as well as two hotel defendants that have defaulted, from December 2014 (before the August 23, 2015 start of the putative class period) through January 2017. (*See* ECF 61, SAC ¶¶ 5-6, 64; *see also* ECF 74, Pls.' Letter ¶ 6.)[10] Like the other named Plaintiffs, Abuladze worked 12-hour

---

[10] This citation is to the second paragraphs 5 and 6.

While Abuladze did not work for any of the seven other Settling Hotel Defendants, at least one named Plaintiff worked for each of those seven other entities during the putative class period: (1) Hilton Garden Inn (54) employed Plaintiffs Amonov, Jabbarov, Mirzamseitov, and Tcbekova

shifts, between five and seven days per week, was not allowed to take personal or sick days, did not receive any benefits, and was not paid any overtime. (*See* ECF 61, SAC ¶ 85.) Managers and supervisors employed by Edison Hotel and Wolcott Hotel supervised Abuladze and the named Plaintiffs. (*See id.* ¶ 92.) They also set the schedules and payment methods, disciplined Abuladze and the other named Plaintiffs, and had control over them while at work. (*See id.* ¶¶ 92-93.) Abuladze and the other named Plaintiffs shared the same responsibilities including "answering calls from hotel guests asking for bookings, reservations, food orders, ticket orders and tours in the city," as well as "assisting the hotel guests with the luggage storage." (*See id.* ¶¶ 96, 100, 112.) While employed by Settling Hotel Defendants, the named Plaintiffs were paid approximately $5.00 per hour, which is less than the relevant minimum wage; worked more than 40 hours per week, without receiving overtime pay; worked 12 hour shifts, but were not paid for "spread of hours worked in excess of 10 hours per day"; and were directed "to work off the clock or without documentation." (*Id*. ¶¶ 118-124.)

---

(*see* ECF 61, SAC ¶¶ 9-10, 25-26, 39-40, 55-56; ECF 74, Pls.' Letter ¶¶ 7, 10, 14, 16, 21); (2) Hilton Garden Inn (52) employed Plaintiffs Chachua, Lapina, Mitrokhina, and Yedrissova (*see* ECF 61, SAC ¶¶ 17-18, 33-34, 41-42, 51-52; ECF 74, Pls.' Letter ¶¶ 8, 13, 17, 19); (3) Holiday Inn Chelsea employed Plaintiffs Alshimbay, Chachua, Domshoeva, Jabbarov, Kalpakbayeva, Khipashvili, Lapina, Lomidze, Mierzejewski, Mirzamseitov, Mitrokhina, Zabakhidze, and Tcebekova (*see* ECF 61, SAC ¶¶ 8 [second paragraph 8], 17-20, 25-28, 33-42, 53-56, 65); (4) Comfort Inn Chelsea/Heritage Hotel employed Plaintiffs Amonov, Balakireva, Chachua, Domshoeva, Duduchava, Gabisonia, Jabbarov, Kalpakbayeva, Khipashvili, Lapina, Lomidze, Mitrokhina, Orynbekov, Pokrovskaia, Taukebayeva, Temiraeva, Yedrissova, Zabakhidze, and Tcebekova (*see id*. ¶¶ 9-10, 13-28, 31-36, 41-50, 53-56); (5) St. James Hotel employed Plaintiffs Alshimbay, Amonov, Domshoeva, Duduchava, Jabbarov, Kalpakbayeva, Khaltanova, Mierzejewski, Mirzamseitov, Orynbekov, and Zabikhidze (*see id*. ¶¶ 7-10 [second paragraphs 7-8], 19-22, 25-30, 37-40, 43-44, 53-54); (6) TRYP by Wyndham employed Plaintiffs Alshimbay, Amonov, Artabaev, Domshoeva, Jabbarov, Khaltanova, Lapina, and Tcebekova (*see id*. ¶¶ 7-12 [second paragraphs 7-8], 19-20, 25-26, 29-30, 33-34, 55-56); and (7) Executive Hotel Le Soleil employed Plaintiffs Balakireva, Gabisonia, Jabbarov, Kalpakbayeva, Lapina, Lomidze, Mierzejewski, Mitrokhina, Orynbekov, Pokrovskaia, Temiraeva, Zabakhidze and Tcebekova (*see id*. ¶¶ 15-16, 23-28, 33-38, 41-46, 49-50, 53-56).

Plaintiffs argue that because the potential class members were all subject to the same employment policies, the proposed class representatives' claims are typical of those of the class members. (*See* ECF 376, Pls.' Fifth Mem. at 20.). Settling Hotel Defendants do not contest this assertion. (*See* ECF 377, Hotel Defs.' Letter.) I conclude that Plaintiffs have shown that the proposed class representatives' claims are typical of the class members, because their claims arise from the same factual and legal circumstances that form the bases of the putative class members' claims; specifically, the proposed class representatives and members of the proposed class worked as concierges for Defendants and claim that they were subject to the same minimum wage, overtime and spread-of-hours practices. *See, e.g., Surdu v. Madison Glob., LLC*, No. 15-CV-6567 (HBP), 2017 WL 3842859, at *5 (S.D.N.Y. Sept. 1, 2017) (finding that the proposed class representatives who worked as tipped employees for the defendants and were subject to the same minimum wage and tipping practices had claims typical of the members of the proposed class).

4. <u>Adequacy of Representation</u>

The fourth element of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For class representatives, "[a]dequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). There is no evidence that the proposed class representative has any conflicts with any of the class members or would not vigorously pursue the claims of the class. *See, e.g., Surdu*, 2017 WL 3842859, at *5.

Courts in this Circuit also consider whether the "plaintiff's attorneys are qualified, experienced and able to conduct the litigation" in assessing adequacy under Rule 23(a)(4). *Flag Telecom*, 574 F.3d at 35. Plaintiffs' counsel are experienced wage-and-hour lawyers. (*See* ECF 375-1, Seventh Haroutunian Decl. ¶¶ 22-30; ECF 376, Pls.' Fifth Mem. at 24.)

I conclude that Plaintiff Abuladze and Plaintiffs' counsel meet the adequacy requirement.

5. Ascertainability

"The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *Petrobras Sec.*, 862 F.3d at 264. "This modest threshold requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *Id.* at 269. Thus, "the ascertainability analysis is limited to the narrower question of whether class membership is objectively possible, not whether it is practical or administratively feasible." *Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*, No. 14-CV-09764 (KPF) (SN), 2018 WL 739580, at *7 (S.D.N.Y. Jan. 10, 2018) (quoting *Petrobras Sec.*, 862 F.3d at 270). "As a result, the standard for ascertainability is not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable." *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 548 (S.D.N.Y. 2021). For a class to be ascertainable, "[m]embership should not be based on subjective determinations, such as the subjective state of mind of a prospective class member, but rather on objective criteria that are administratively feasible for the Court to rely on . . . ." *Surdu*, 2017 WL 3842859, at *5.

Plaintiffs defined the class as "all individuals who were hourly, non-exempt employees of Apple Commuter Inc., Hotel Concierge Express Inc., Biren J. Shah," or their related entities, "who expressly performed services for any such entity or individual at the locations owned and/or operated by the [Settling] Hotel Defendants during the Settlement Period." (ECF 375, Sixth Mot. at 1.) As noted above, the Settlement Period is defined as April 7, 2016 through the present. (*See* ECF 376, Pls.' Fifth Mem. at 7; ECF 385, Pls.' Sixth Mem. at 3.) However, Plaintiffs have not defined which related entities or affiliates of Apple, Hotel Concierge Express, Biren J. Shah are meant to be covered. As such, the definition as written is not specific enough to meet this standard. Accordingly, I respectfully recommend that Your Honor should strike "any related entity associated or affiliated with Apple Commuter Inc., Hotel Concierge Express, Inc., or Biren J. Shah" from the class definition. With that change, the ascertainability requirements would be met.

6. Rule 23(b) Requirements

Besides satisfying the Rule 23(a) prerequisites, the proposed class must qualify under one of the three categories set forth in Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3) (*see* ECF 326, Pls.' Mem. at 14), which requires that "the court find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

*a. Predominance*

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 623 (1997). The predominance requirement overlaps considerably with the Rule 23(a)(2) commonality requirement, although the predominance requirement is "far more demanding." *Id*. at 624.

"The predominance inquiry begins . . . with the elements of the underlying cause of action." *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 44 (S.D.N.Y. 2020) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2001)). "[A] court examining predominance must assess (1) the elements of the claims and defenses to be litigated; and (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (quoting *McLaughlin on Class Actions* § 5:23 (11th ed.)).

"[P]redominance is a comparative standard[.]" *Petrobras Sec.*, 862 F.3d at 268. Courts must "give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where "the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized class-wide proof." *Id.* (quoting William B. Rubenstein, Newberg and Rubenstein on Class Actions § 4:50, at 196-97 (5th ed. 2012)). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.*; *see also Petrobras Sec.*, 862 F.3d at 270. "This analysis is more qualitative than quantitative, and must account for the nature and significance of the material common and

individual issues in the case." *Petrobras Sec.*, 862 F.3d at 271; *see also Haley v. Tchrs Ins. & Annuity Ass'n. of Am.*, 54 F.4th 115,121 (2d Cir. 2022) ("Predominance is not simply an exercise in tallying up issues[.]").

Defendants' alleged failure to pay minimum wages, overtime wages, and spread-of-hours wages to concierge works are the core issues in this litigation and relate to the general practices of Defendants with respect to their concierges. Thus, common issues predominate over individual issues, such as the number of hours worked by particular members of the proposed class. *See, e.g., Surdu,* 2017 WL 3842859, at *6; *Zivkovic*, 329 F.R.D. at 75 ("Where plaintiffs' claims arise from a common policy and rely on a common legal theory, the predominance requirement is satisfied because the need for individualized determinations of the putative class members' damages does not, without more, preclude class certifications."); *Vargas*, 324 F.R.D. at 329 ("Courts in this district have found that the types of individual questions that exist in wage-and-hour cases, such as the hours worked or the exact damages to which each Plaintiff might be entitled, do not defeat the predominance requirement."); *Garcia*, 281 F.R.D. at 108 ("[P]redominance is satisfied where, as here the central issue is whether the defendants had a uniform policy or practice of denying overtime and spread-of-hours compensation to its employees.").

*b. Superiority*

To certify a Rule 23(b)(3) class, the court must also "determin[e] that class certification is the superior method for adjudicating [the class's] claims." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015). Rule 23(b)(3) "lists four factors – individual control of litigation, prior actions involving the parties, the desirability of the forum, and manageability – which courts

should consider in" determining whether to certify a class. *Id.* (citing Fed. R. Civ. P. 23(b)(3)(A)-(D)). The Second Circuit has explained that while these factors "apply to both predominance and superiority, they more clearly implicate the superiority inquiry." *Id.* Manageability is "the most critical concern" in determining superiority and involves consideration of such factors as whether "a particular forum is more geographically convenient for the parties," whether "the defendant is located in the forum state," *id.*, and whether the "proposed classes would implicate the laws of multiple states." *In re Digit. Music Antitrust Litig.*, 321 F.R.D. 64, 99 (S.D.N.Y. 2017); *see also Hobbs v. Knight-Swift Transp. Holdings, Inc.*, No. 21-CV-1421 (JLR), 2025 WL 1577271, at *18 (S.D.N.Y. June 4, 2025) (finding no manageability issues defeated superiority in a class member New York wage-and-hour action where the class members were based in and around New York, the defendant company operated multiple terminals in New York, the Court was familiar with the NYLL and New York choice of law rules that governed the action, and the Court was familiar with the history of the case).

While there have been earlier cases against Defendants arising out of similar allegations to those in this case,[11] the other factors weigh in favor of superiority. A class action is more economically feasible due to the putative class members' limited financial resources. *See, e.g., Zivkovic*, 329 F.R.D. at 76 (finding that superiority was satisfied where "[i]t is unlikely that the class members would engage in individual action because the amount of potential recovery is low and

[11] In 2017, Plaintiffs' counsel brought suit under the FLSA against Apple Defendants and some of the Hotel Defendants on behalf of four employees, none of whom is a named Plaintiff in this matter. *See* Complaint, *Botakhanova v. Apple Commuter Inc.*, No. 17-CV-4296 (ER) (S.D.N.Y. Jun. 7, 2017), ECF 1. That case was dismissed with prejudice following the execution of a settlement agreement and stipulation of voluntary dismissal. *See* Stipulation and Order of Dismissal with Prejudice, *Botakhanova v. Apple Commuter Inc.,* No. 17-CV-4296 (ER) (S.D.N.Y. Oct. 21, 2019), ECF 133.

likely to be outweighed by the individual cost of litigation"); *Schear,* 297 F.R.D. at 126 ("Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants."); *Torres v. Gristede's Operating Corp*., No. 04-CV-3316 (PAC), 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (explaining that a class action is superior to other methods where the amount of recovery was small in relation to litigation costs). Litigation in this District is appropriate because Plaintiffs worked for Settling Hotel Defendants as concierges in this jurisdiction. And class adjudication will conserve judicial resources and avoid the waste of repetitive proceedings. *See Vargas*, 324 F.R.D. at 330 ("[B]ecause the class is composed of individuals who worked in and around New York City, adjudication of the claims in this forum is appropriate."); *Zivkovic*, 329 F.R.D. at 76 (same); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 552-53 (E.D.N.Y. 2017) (holding that where a significant number of class members were located in the jurisdiction and the class representatives were residents of New York and purchased products in New York, this forum was more appropriate than others for the purposes of Rule 23(b)(3) superiority). Plaintiffs therefore have established the superiority element.

**B. Ballon Stoll P.C. Should Be Appointed as Class Counsel**

Rule 23(g) provides that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g). In determining whether the requested counsel should be appointed, courts must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the

> applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Plaintiff's counsel at the firm of Ballon Stoll P.C. have already done extensive work in this action, including commencing the action in state court, opposing motions to dismiss, drafting and filing motions for class certification, and negotiating the Settlement Agreement. (*See* ECF 375-1, Seventh Haroutunian Decl. ¶¶ 3-20; *see also* ECF 385, Pls.' Sixth Mem. at 5.) Plaintiffs' counsel are experienced wage-and-hour lawyers who are familiar with the applicable law. (*See id.* ¶¶ 22-29). And Plaintiffs' counsel have indicated their intent to continue to devote resources to representing the class. (*See* ECF 376, Pls.' Fifth Mem. at 24.) Accordingly, if Your Honor adopts my recommendation to provisionally certify a class for settlement purposes, I respectfully recommend that Your Honor approve the appointment of Ballon Stoll P.C. as class counsel.

**C. Notice to the Class**

Rule 23(c)(2)(B) directs that: "For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.; see also Hamsher v. Scotts Co., LLC*, No. 17-CV-4206 (VSB), 2019 WL 13379536, at *3 (S.D.N.Y. Feb. 1, 2019).

Plaintiffs have asked the Court to (1) allow notice to be sent via mail and via published summary notice in an agreed newspaper and/or online platform agreed upon by the parties within fourteen days of receipt by the settlement claims administrator (the "Administrator") of the class list and (2) to approve a form of proposed class notice advising class members of the existence and nature of this suit, of the class definition, of their options of remaining in the lawsuit or opting out, of the time and manner of requesting exclusion, of the binding nature of a class judgment, of the qualifications of class counsel, and of how to get more information. (*See* ECF 375, Sixth Mot. at 1-2; ECF 376, Pls.' Fifth Mem. at 9; *see also* ECF 384-1, Proposed Claim Notice.) The proposed form of notice meets the requirements of Rule 23(c)(2)(B).

**IV.**

**LEGAL STANDARDS FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT**

Approving a class action settlement "typically occurs in two stages: (1) preliminary approval – where prior to notice to the class, a court makes a preliminary evaluation of fairness, and (2) final approval – where notice of a hearing is given to the class members, and class members and settling parties are provided the opportunity to be heard on the question of final court approval." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019). In deciding whether to grant preliminary approval, the Court "must determine whether giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* at 28 (citing Fed. R. Civ. P. 23(e)(1)(B)(i-ii)). "[G]ranting of [preliminary approval] is not tantamount to a finding that the settlement is fair and reasonable. It is at most a determination that there is what might be termed probable cause to submit the proposal to class

members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980); *see also Caccavale v. Hewlett-Packard Co.,* No. 20-CV-974 (NJC) (ST), 2025 WL 882220, at *3 (E.D.N.Y. Mar. 14, 2025) (describing preliminary approval as the court's preliminary evaluation of fairness and certification of the class for purposes of judgment on the proposal), *report and recommendation adopted,* 2025 WL 882221 (E.D.N.Y. Mar. 21, 2025).

"Because Rule 23(e)(2) sets forth the factors that a court must consider when weighing final approval . . . courts must assess at the preliminary approval stage whether the parties have shown that the court will likely find that the factors weigh in favor of final settlement approval." *Id.* "However, before its amendment in 2018, Rule 23 did not provide any factors for courts to consider when weighing final approval" and "simply required the settlement to be fair, reasonable, and adequate." *Id.* Accordingly, Courts in this Circuit turned to the nine factors laid out in *City of Detroit v. Grinnell Corp.* to ascertain a proposed settlement's fairness. *See* 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The nine factors are: "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).

The current version of Rule 23(e)(2), however, directs the Court to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "Paragraphs (A) and (B) constitute the procedural analysis factors, and examine the conduct of the litigation and of the negotiations leading up to the proposed settlement." *Payment Card*, 330 F.R.D. at 29 (citing Fed. R. Civ. P. 23 advisory committee's notes to 2018 amendment). "Paragraphs (C) and (D) constitute the substantive analysis factors, and examine the relief that the settlement is expected to provide to class members . . . ." *Payment Card*, 330 F.R.D. at 29. Even after the amendment of Rule 23, courts assess Rule 23(e)(2)'s factors in conjunction with the *Grinnell* factors, "which remain a useful framework for considering the substantive fairness of a settlement." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) ("[T]he revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors.").

## V.

## ANALYSIS OF THE SETTLEMENT AGREEMENT

### A. Adequate Representation

I first assess whether Plaintiff Abuladze and Plaintiffs' counsel adequately represent the proposed class. *See* Fed. R. Civ. P. 23(e)(2)(A). I conclude that they do. *See supra* Part III.A.4.; III.B.

### B. Arm's-Length Negotiations

In deciding whether a proposed settlement agreement is fair, a court must also consider whether the parties negotiated the proposed settlement at arm's length. *See* Fed. R. Civ. P. 23(e)(2)(B). However, the court may not presume a settlement agreement's fairness based solely on its arm's-length negotiation. *See Moses*, 79 F.4th at 243.

The parties have already engaged in four years of litigation (including a motion to dismiss), mediation sessions, and subsequent settlement negotiations under my supervision. (*See* ECF 385, Pls.' Sixth Mem. at 5.) I have seen vigorous advocacy on both sides and no evidence of bad faith or collusion. This factor therefore weighs in favor of preliminary approval of the Settlement Agreement. *See, e.g., C.K. through P.K. v. McDonald,* 816 F. Supp. 3d 284, 307-08 (E.D.N.Y. 2026) (emphasizing that 18 months of extensive negotiations, where the court observed "vigorous" advocacy and no bad faith, supported approval in considering whether "the proposal was negotiated at arm's length"); *Whelan v. Diligent Corp*., 349 F.R.D. 79, 85-86 (S.D.N.Y. 2025) (finding that six months of negotiations through a private mediator, where "counsel for all sides zealously advocated for their clients' positions," satisfied the arm's length requirement).

**C. Adequate Relief for the Class**

I next assesses whether relief for the class is adequate, considering: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (3) the terms of any proposed award of attorney's fees, including timing of payment; and (4) any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(i–iv). "The Court also considers the proposed release from liability as an additional factor under this section, as it affects the determination of the fairness, reasonableness, and adequacy of class relief." *Payment Card*, 330 F.R.D. at 36.

1. Costs, Risks, and Delay of Trial and Appeal

The "costs, risks, and delay" factor touches on several of the *Grinnell* factors, which guide my assessment whether this Rule 23(e)(2) factor will likely weigh in favor of granting final approval. *Payment Card*, 330 F.R.D. at 36. The relevant *Grinnell* factors are "(i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *Id.* The question before me is whether the proposed settlement would result "in substantial and tangible present recovery, without the attendant risk and delay of trial." *Id.*

*a. Complexity, Expense, and Likely Duration of Litigation*

"[C]lass action suits in general have a well-deserved reputation as being the most complex." *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999). Accordingly, "it is reasonable to assume" that, without a settlement, continued litigation will require "extensive time

and expense." *Garland v. Cohen & Krassner*, 08-CV-4626 (KAM), 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011).

This is a complex case involving 26 named Plaintiffs, nine Settling Hotel Defendants, and a class period of almost a decade. (*See* ECF 387, Ninth Haroutunian Decl. ¶ 10.) Absent settlement, the parties will need to conduct fact discovery, including depositions of the 26 named Plaintiffs, Shah, and representatives of each of the Settling Hotel Defendants. There would be significant additional costs if the parties decided to conduct expert discovery. There are contested legal and factual issues relating to establishing joint employer liability. Continued litigation would be prolonged and costly. (*See* ECF 385, Pls.' Sixth Mem. at 6-7.) Thus, this factor weighs in favor of preliminary approval. *See Villa v. Highbury Concrete Inc*., No. 17-CV-0984 (PK), 2022 WL 19073649, at *4 (E.D.N.Y. Nov. 25, 2022) (concluding that this factor weighed in favor of preliminary approval where additional litigation "would require both sides to expend considerable time and resources"); *Payment Card*, 330 F.R.D. at 36 ("Because of the complexity and difficulty of the issues in this case, it requires, and would continue to require, costly counsel and experts, and a wealth of time. This subfactor will likely weigh in favor of granting final approval.").

*b. Risks of Establishing Liability*

"In considering the risks of establishing liability, the court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Mikhlin v. Oasmia Pharm. AB*, 19-CV-4349 (NGG), 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021). The Court need not "adjudicate the disputed issues or decide unsettled questions" to assess such risks. *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004). The "fact-intensive nature of . . . NYLL claims" results in "risk in proving liability . . . ." *Villa*, 2022 WL 19073649, at *4.

A significant risk to establishing liability on the part of the Settling Hotel Defendants is the risk that they will not be found to be joint employers with Apple Defendants and indeed will not be found to be Plaintiffs' employers at all. (*See* ECF 385, Pls.' Sixth Mem. at 8; ECF 385-1, Eighth Haroutunian Decl. ¶ 22.) I do not need to reach the merits of this issue to conclude that there is sufficient risk in establishing liability and that this factor weighs in favor of preliminary approval. *See Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-CV-456 (RPK) (LB), 2021 WL 7906584, at *6 (E.D.N.Y. May 25, 2021) ("[G]iven the inherent risks and duration of litigation, the certainty of a substantial and speedy recovery in this case weighs in favor of settlement approval.").

*c. Risks of Establishing Damages*

In addition to the risks of establishing liability, courts must assess the risks of establishing damages. *See Payment Card*, 330 F.R.D. at 36. "[T]he history of litigation is replete with cases in which plaintiffs succeeded at trial on liability, but recovered no damages, or only disappointing damages, at trial, or on appeal." *Sumitomo Copper*, 189 F.R.D. at 283. Here, there is a risk that the factfinder will not credit the Plaintiffs' testimony about their damages, cobbled together as it is from fading recollections and old text messages. (*See* ECF 385, Pls.' Sixth Mem. at 8.) Additionally, Plaintiff alleges that Apple's records may be incomplete, which would make it more difficult to prove damages. (*See id.*) This factor weighs in favor of preliminary approval.

*d. Risks of Maintaining the Class*

The risks of maintaining a class through trial weigh in favor of settlement where Settling Hotel Defendants would likely oppose class certification. *See Payment Card*, 330 F.R.D. at 39-40. A class has not yet been certified, and Settling Hotel Defendants have consented to class

certification for settlement purposes only. If litigation were to continue, Settling Hotel Defendants could oppose Plaintiffs' attempts to seek certification, including on the ground that they were not joint employers with each other, and that each of them had different employment policies and was differently situated. (*See* ECF 385-1, Eighth Haroutunian Decl. ¶ 22.) This factor therefore weighs in favor of preliminary approval. *See Payment Card*, 330 F.R.D. at 40 ("[T]here is no guarantee that the class could be certified if the parties proceeded with the litigation, and Defendants have indicated that they are only consenting to class certification for the purposes of settlement.").

2. Effectiveness of the Proposed Method of Processing Claims <u>And of the Method for Distributing Settlement Proceeds to the Class</u>

Courts look primarily to the opinion of counsel when determining whether a plan of allocation is fair. *See In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-CV-10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007); *In re Lloyd's Am. Tr. Fund Litig.*, No. 96-CV-1262 (RWS), 2002 WL 31663577, at *15, *18 (S.D.N.Y. Nov. 26, 2002) (determining that the adequacy of a proposed settlement turned on whether counsel have properly apprised itself of the merits of a claim, including whether apportionment of settlement proceeds is fair and appropriate). Courts also consider the positive or negative reaction of a class to the plan of allocation. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (finding lack of objections by class members to be a factor supporting approval of the proposed allocation plan).

Here, Plaintiffs' counsel have provided a detailed summary of the settlement terms, including the gross amount to be paid by Settling Hotel Defendants, provisions for opting out, agreement, and an allocation formula for making payments to Authorized Claimants, defined in the proposed Settlement Agreement as members of the putative class who timely file a valid claim

in accordance with the terms of the proposed Settlement Agreement. (*See* ECF 376, Pls.' Fifth Mem. at 7-8; ECF 385, Pls.' Sixth Mem. at 6; ECF 384, Proposed Settlement Agreement ¶ 1.2.)

Specifically, Plaintiffs and Settling Hotel Defendants have agreed to a gross settlement fund of $270,000.00, comprised of a $30,000.00 payment by each Settling Hotel Defendant; in exchange, Settling Hotel Defendants receive full releases from all putative class members who do not timely opt out of participation in the settlement. (*See* ECF 376, Pls.' Fifth Mem. at 6.) The proposed Settlement Agreement defines the settlement class as all individuals who were hourly, non-exempt employees of Apple, Hotel Concierge Express, Shah, with Settling Hotel Defendants who expressly performed services for such entity. (*See id.*)

The proposed Settlement Agreement's allocation formula for calculating the net settlement amount for each participant in the settlement is based on his or her number of weeks of work during the Settlement Period. (*See id.*) Specifically, each Authorized Claimant's settlement amount is calculated by determining his or her percentage of the total settlement fund by dividing the number of weeks he or she worked during the Settlement Period by the total number of weeks worked by all Authorized Claimants during the Settlement Period, and then multiplying that percentage by the amount of the total settlement fund; the proposed Settlement Agreement also provides that Plaintiffs and Settling Hotel Defendants may modify the allocations as necessary to ensure the intent of Plaintiffs and Settling Hotel Defendants in entering into the proposed Settlement Agreement. (*See id.* at 7-8.) Twenty-one of the 26 named Plaintiffs have already signed the Settlement Agreement, indicating their support for the settlement, including the terms of allocation. (*See* ECF 385, Pls.' Supplemental Mem. at 7.)

Plaintiffs do not describe any mechanism by which they and Settling Defendants might modify allocations. Nor have Plaintiffs provided any rationale or case law supporting the ability to make essentially unbounded modifications to the allocations. I therefore respectfully recommend that Your Honor should strike as unreasonable the provision in the Settlement Agreement permitting modification of allocations.

The Settlement Agreement also needs a provision addressing the possibility that there are unclaimed funds at the end of the notice and claim period. (To the extent that the provision permitting adjustments to allocations was intended to fulfill that function, I conclude that it does not do so in a satisfactory manner.) Accordingly, I respectfully recommend requiring Plaintiffs and Settling Defendants to revise the Settlement Agreement to provide that, if there are more than $10,000 in unclaimed funds at the end of the notice and claim period, the Administrator shall carry out a second round of distributions following the same allocation formula used in the initial round of allocations; and if there are less than $10,000 in unclaimed funds at the end of the notice and claim period, the unclaimed funds shall be donated to a charity agreed upon by counsel for Plaintiff and counsel for the Settling Defendants.

With those changes, I conclude that the proposed allocation formula, which is calibrated to the harm to each putative class member, is a reasonable, effective, and detailed form of relief distribution. *See, e.g., Mikhlin*, 2021 WL 1259559, at *6 (approving an allocation plan that properly and specifically calculated each class member's share based on the magnitude of his or her injury); *Lloyd's Am. Tr. Fund*, 2002 WL 31663577, at *19 (approving calculations based on differing limits for each class members); *Jander v. Ret. Plans Comm. of IBM*, No. 15-CV-3781 (CM), 2021 WL

3115709, at *6 (S.D.N.Y. July 22, 2021) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.").

Accordingly, with the described revisions to Section 3.4 of the Settlement Agreement, this factor weighs in favor of preliminary approval.

3. Proposed Amount of Attorneys' Fees and Costs

Courts must also consider "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(c)(iii). "This review provides a backstop that prevents unscrupulous counsel from quickly settling a class's claims to cut a check." *Moses*, 79 F.4th at 244. "[T]he relief actually delivered to the class can be a significant factor in determining the appropriate fee award." Fed. R. Civ. P. 23(e)(2) advisory committee's note to the 2018 amendment. When determining the appropriate award, Courts generally used one of two approaches: (1) the lodestar method, or (2) the percentage of the fund method. *See Roberts v. Genting New York LLC*, 821 F. Supp. 3d 340, 355 (E.D.N.Y. 2026); *In re 3D Sys. Sec.*, No. 21-CV-1920 (NGG) (TAM), 2024 WL 50909, at *14 (E.D.N.Y. Jan. 4, 2024). Under either method, the Second Circuit has identified six factors to guide assessment of the reasonableness of claimed attorneys' fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

*a. Percentage Method for Attorneys' Fees*

Plaintiffs' counsel seek an award of $90,000, which is 33% of the total settlement fund, as well as "up to $17,000" in costs. (*See* ECF 376, Pls.' Fifth Mem. at 8; ECF 387, Ninth Haroutunian

Decl. ¶¶ 1, 15.) "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness." *Mikhlin*, 2021 WL 1259559, at *7 (collecting cases); *Roberts*, 821 F. Supp. 3d at 359-60 (collecting cases); *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("it is very common to see 33% contingency fees in cases with funds of less than $10 million[.]"). The requested attorneys' fees pass muster based on the percentage method.

*b. Lodestar Cross-Check on Claimed Attorneys' Fees*

Where, as here, the Court uses the percentage of the fund method to assess the reasonableness of the fee request, and where, as here, counsel have not provided the Court with signed retainer agreements for all the named Plaintiffs (*see generally* ECF 387-2, Retainer Agreements), Courts in this Circuit "will also crosscheck the percentage fee against counsel's lodestar amount of hourly rate multiplied by hours spent." *3D Sys.,* 2024 WL 50909, at *14. The lodestar "is the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Olaechea v. City of New York*, No. 17-CV-4797 (RA), 2022 WL 3211424, at *13 (S.D.N.Y. Aug. 9, 2022) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). "A lodestar multiplier then is calculated by dividing the fee award by the lodestar." *Volino v. Progressive Cas. Ins. Co.*, No. 21-CV-6243 (LGS), 2025 WL 871602, at *2 (S.D.N.Y. Mar. 20, 2025).

"To support the calculation of the lodestar, counsel must submit evidence providing a factual basis for the award in the form of contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Id.*; *see also N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983) (requiring contemporaneous time records to support an attorneys' fees award). "Counsel are not required to

record in great detail how each minute of their time was expended" but "should identify the general subject matter of their time expenditures." *Mason Tenders Dist. Council Welfare Fund v. Gibraltar Contracting, Inc.*, No. 18-CV-3668 (MKV) (JLC), 2020 WL 5904357, at *2 (S.D.N.Y. Oct. 6, 2020) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)), *adopted by* 2020 WL 6363960 (Oct. 29, 2020). Plaintiffs' counsel have submitted his billing statement "reflecting the time expended on this matter from the inception of representation through June 5, 2026." (ECF 387, Ninth Haroutunian Decl. ¶ 2.) The billing statement identifies the dates on which each employee worked on this case, the specific nature of the work conducted, and the amount of time spent. (*See* ECF 387-1, Billing Statement.) This proof is sufficient to support the request for attorneys' fees. *See Cruz v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) (accepting a "typed listing of [attorneys'] hours from their computer records" as a form of contemporaneous records, where the attorneys "made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records").

Plaintiffs' counsel represent that his firm spent approximately 457 hours litigating this matter; when multiplied by each timekeeper's hourly rate, the lodestar amount is $189,639.50. (*See* ECF 387-1, Billing Statement at 15.) The lodestar multiplier is approximately 0.47, (*See* ECF 387, Ninth Haroutounian Decl. ¶ 14.), which is "well within the range of multipliers commonly awarded in securities class actions and other complex litigation." *3D Sys.*, 2024 WL 50909, at *15 (collecting cases approving lodestar multiplier between 3.5 and 4.75); *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (finding a lodestar multiplier of 1.3 reasonable); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. 12-MD-2389, 2015 WL

6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (finding a lodestar multiple of 1.02 reasonable), *aff'd*, 674 F. App'x 37 (2d Cir. 2016).

However, I believe the lodestar amount to be overstated, both because of counsel's billing rates and the hours billed.[12] Counsel request hourly rates of $475 per for partners, $450 for associates (without providing information on the associates' seniority), $225 per hour for legal staff, and $150 per hour for paralegals and support staff. (*See* ECF 387, Ninth Haroutounian Decl. ¶¶ 7, 17; *see also* ECF 387-1, Billing Statement at 15.) The requested rates are above the high end of rates typically approved for attorneys with similar experience in FLSA and NYLL cases; the paralegal and staff rates are at the high end of the range typically approved in similar cases. *See Hollis*, 2023 WL 4350613, at *3 n.6 ("Courts of this Circuit commonly allow for hourly rates of $300 to $400 for experienced attorneys or partners in FLSA and NYLL wage-and-hour cases."); *Uribe*, 2023 WL 5917550, at *1 (finding $425 per hour for a partner to be on the high end of the range of rates approved in FLSA and NYLL cases); *Gautier v. 3 Way Rest., Inc.,* No. 20-CV-3776 (JGLC) (OTW), 2025 WL 2807124, at *9 (S.D.N.Y. May 8, 2025) (noting that in FLSA senior

[12] Courts take different approaches to reviewing the bills from which the lodestar amount is calculated. *See, e.g., Lea*, 2021 WL 5578665, at *11 (considering the reasonableness of "[t]he time and labor expended by class counsel"); *Facebook*, 2015 WL 6971424, at 10 (considering the reasonableness of the time billed but not the hourly rates in performing lodestar check); *3D Sys.*, 2024 WL 50909, at *16 (assessing the reasonableness of the rates and reducing rates but not assessing the reasonableness of the hours expended); *Uribe v. Presitge Car Care of NY Inc.*, No. 23-CV-1853 (LGS), 2023 WL 5917550, at *1 (S.D.N.Y. Aug. 9, 2023) (same); *Roberts*, 821 F. Supp. 3d at 356-58 (performing the lodestar cross check based only on hours supported by contemporaneous records but declining to scrutinize the reasonableness of those hours); *Hollis v. All Am. Bar on First, Inc.*, No. 22-CV-1466 (JHR), 2023 WL 4350613, at *3 (S.D.N.Y. July 5, 2023) (assessing the reasonableness of the lodestar multiplier without assessing the reasonableness of the hourly rates or hours expended); *Payment Card*, 991 F. Supp. 2d at 447-48 (assessing the reasonableness of the lodestar multiple without "engaging in a gimlet-eyed review of the fee application"). Nevertheless, it is well within the Court's discretion to examine both the hourly rates and hours billed when performing a lodestar cross check.

associates typically receive $300 per hour and junior associates $225 per hour), *report and recommendation adopted,* 2025 WL 2806606 (S.D.N.Y. Oct. 2, 2025); *Access Bio, Inc. v. Div. 5 Labs, Inc*., No. 23-CV-4820 (LGS), 2024 WL 3084990, at *3 (S.D.N.Y. June 20, 2024) (awarding an hourly rate of $150 for paralegal work); *Stokes v. MilkChocolateNYC LLC*, 681 F. Supp. 3d 226, 245 (S.D.N.Y. 2023) (awarding an hourly rate of $125 for paralegal work). And the hours billed include work on numerous tasks that should not be included in the attorneys' fees relating to Plaintiffs' settlement with Settling Hotel Defendants. For example, the Billing Statement references work opposing the motion to dismiss, without suggesting any deduction for work on the unsuccessful portions of the motion (*see, e.g.,* ECF 387-1, Billing Statement at 6-7); work for which no description is provided (*see id.* at 2-5); work relating to dismissal of defendants not involved in this settlement (*see id.* at 10-11); work on the separate settlement with Apple Defendants (*see id*. at 11); work on pursuing default judgments (*see id.* at 7, 9); and work redoing and supplementing defective filings (*see id.* at 11-13).

However, even if the time spent on tasks not properly included in a fee award in connection with this settlement is excluded and the hourly rates are reduced to $400 for partners, $300 for associates, and $150 for legal staff and paralegals, the requested fee of $90,000 is less than the lodestar, which militates in favor of approving the requested fee award. *See Uribe*, 2023 WL 5917550, at *1 (approving a percentage fee award where the requested rates were high but where reducing the rates still resulted in a lodestar amount that was higher than the requested fee).[13]

---

[13] For purposes of calculating the lodestar, I made two types of adjustments. I excluded time for which no description was provided (4.5 hours); time spent on the motion to dismiss (because

*c. Reasonableness Under the* Goldberger *Factors*

As to the first *Goldberger* factor, the reduced hours expended by class counsel in this case is reasonable considering that the litigation has been proceeding for almost four years, required motion practice, and included extensive settlement negotiations as well as the filing of motions for class certification. *See supra* Part I.B. Moreover, the claimed time is largely supported by counsel's declaration and corresponding billing records. (*See* ECF 387, Ninth Haroutunian Decl. ¶¶ 7-9; ECF 387-1, Billing Statement.) *See, e.g., Thomas v. AAM Holding Corp.,* No. 22-CV-3110 (GHW) (SLC), 2024 WL 4285847, at *4 (S.D.N.Y. Sept. 25, 2024) (finding 408.5 hours expended in a wage-and hour-case through the amendment of a complaint, agreement to arbitrate, and settlement reasonable); *Glover v. Triumph Constr. Corp*., No. 18-CV-6763 (CLP), 2021 WL 7906504, at *4 (E.D.N.Y. July 12, 2021) (finding the requested 30 percent fee of $53,333 in a FLSA settlement was reasonable for the 400 hours of work spent litigating the case through approximately two years of discovery until settlement).

With respect to the second factor, this case, which has been in litigation for over four years and involves 26 named Plaintiffs and multiple Defendants (*see* ECF 387, Ninth Haroutunian Decl. ¶ 10), is complex enough to support the reasonableness of the requested fee. *See supra* Part

Plaintiffs did not account for time spent on unsuccessful arguments), default proceedings, and filings related solely to the Apple Defendants (55.2 hours); and time spent on redoing and supplementing defective filings (35.4 hours). These exclusions reduced the claimed hours worked to 358.1 reasonable hours. And I reduced the requested hourly rates to $400 for partners, $300 for associates, and $150 for paralegals and other legal staff (except where a timekeeper identified as legal staff performed attorney-level work). Applying these rate reductions to the reduced hours leads to a lodestar of $110,847.50 and a lodestar multiplier of 0.8.

V.C.1.a.; *see also Roberts*, 821 F. Supp. 3d at 359 (finding that the "inherently complex" nature of class action cases favor approving a 31.42% fee award).

The third factor is "the risk of the litigation," which "is often cited as the first, and most important, *Goldberger* factor." *Lea,* 2021 WL 5578665, at *12. The Second Circuit has recognized the inherent risk "associated with a case undertaken on a contingent fee basis." *Id*. (citing *Grinnell*, 495 F.2d. at 470.) There are substantial litigation risks in this case. *See supra* Part V.C.1.b. Plaintiffs' counsel took this action on a contingent basis and has received no payment during the nearly eight years of pre-suit settlement discussions and litigation. (*See* ECF 387, Ninth Haroutunian Decl. ¶¶ 4-5; ECF 387-2, Retainer Agreements.) This factor counsels in favor of approving the requested fee. *See Lea*, 2021 WL 5578665, at *12; *3D Sys.*, 2024 WL 50909, at *14; *Roberts*, 821 F. Supp. 3d at 359.

As to the fourth factor, Plaintiffs' lawyers are experienced wage-and-hour attorneys who have done extensive work in this action, including commencing a case in state court, opposing the motion to dismiss, drafting and filing a motion for class certification, and negotiating the proposed Settlement Agreement. *See supra* Part III. And Plaintiffs' counsel have indicated their intent to continue to devote resources to representing the putative class, including by administering the settlement, coordinating with the Administrator, responding to class member inquiries, supervising the notice and claims process, and seeking final approval of the settlement. (*See* ECF 376, Pls.' Fifth Mem. at 24; ECF 387, Ninth Haroutunian Decl. ¶ 9.) Accordingly, if Your Honor adopts my recommendation to provisionally certify a class for settlement purposes and approve the appointment of Ballon Stoll P.C. as class counsel, this factor weighs in favor of approving the requested fee.

With regard to the fifth factor, the requested one-third fee constitutes a proportion of the settlement fund that is routinely approved as reasonable. *See Mikhlin*, 2021 WL 1259559, at *7 (collecting cases); *Roberts*, 821 F. Supp. 3d at 355 (collecting cases); *Payment Card*, 991 F. Supp. 2d at 445 ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million[.]").

And as to the sixth factor, "public policy favors the award of reasonable attorneys' fees in class action settlements." *Lea*, 2021 WL 5578665, at *13. Courts in this Circuit have recognized that granting similar requested attorneys' fees "encourage[s] other experienced and able counsel to represent workers who may not have the means to pursue an individual legal action." *Roberts*, 821 F. Supp. 3d at 360 (collecting cases); *Chavarria v. N.Y. Airport Serv.*, LLC, 875 F. Supp. 2d 164, 177-78 (E.D.N.Y. 2012) ("Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.").

The *Goldberger* factors weigh in favor of approving the requested fee award.

***

Accordingly, I respectfully recommend approving the requested attorneys' fees.

*d. Reasonableness of Costs and Expenses*

Plaintiffs' counsel seek an award of "up to $17,000" in expenses addition to attorneys' fees. (*See* ECF 376, Pls.' Fifth Mem. at 8; ECF 387, Ninth Haroutunian Decl. ¶ 1.) "Courts routinely note that counsel is entitled to reimbursement . . . for reasonable litigation expenses." *Lea*, 2021 WL 5578665, at *13; *see also Payment Card*, 991 F. Supp. 2d at 448 ("As a general rule, counsel are entitled to reimbursement for reasonable out-of-pocket expenses incurred over the course of

litigating the case."). Such reasonable expenses include engaging and preparing investigative and "expert witnesses, filing fees, service of process, travel, legal research and document production and review." *Glob. Crossing*, 225 F.R.D. at 468.

Plaintiffs have submitted a list of expenses totaling $11,974.96, which is less than the $17,000 anticipated by the proposed Settlement Agreement. (*See* ECF 387, Ninth Haroutunian Decl. ¶ 15; ECF 387-1, Billing Statement at 16.) The expenses consist of "professional services rendered," and costs for mailing, service of process, copying, and filing fees. (ECF 387-1, Billing Statement at 15-16; ECF 387, Ninth Haroutunian Decl. ¶ 15.) Having reviewed the costs, I conclude that they were reasonably expended and should be reimbursed. Therefore, Plaintiffs' counsel should only be reimbursed for the $11,974.96 in claimed expenses supported by documentary evidence. *Lea*, 2021 WL 5578665, at *13 (awarding costs for reasonable expenses supported by documentary evidence).

4. <u>Any Agreement Required To Be Identified Under Rule 23(e)(3)</u>

Rule 23(e)(3) states that "the parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Plaintiffs and Settling Hotel Defendants have not identified any such agreements.

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that Your Honor **GRANT** the Sixth Motion (ECF 375) and issue an order:

1. For purposes of settlement only, pursuant to Federal Rules of Civil Procedure 23(a) and (b(3), GRANTING conditional certification of the following settlement class, consisting of:

> Plaintiffs and all individuals who were hourly, non-exempt employees of Apple Commuter Inc., Hotel Concierge Express Inc., and Biren J. Shah who expressly performed services for any such entity or individual at the locations owned and/or operated by the Hotel Defendants during the Settlement Period of April 7, 2016 to present.

2. For purposes of settlement only, pursuant to Federal Rule of Civil Procedure 23, APPOINTING Kakha Abuladze as class representative and Ballon Stoll P.C. as class counsel.

3. For purposes of settlement only, CONCLUDING that the prerequisites of Federal Rules of Civil Procedure 23(a) and (b)(3) have been satisfied as to the Settlement Class, in that (i) the number of Class Members is so numerous that joinder of all Class Members is impracticable; (ii) there are questions or law or fact common to the Settlement Class; (iii) the claims of the named Plaintiffs are typical of the claims of the Class Members of the Settlement Class; (iv) the named Plaintiffs will fairly and adequately represent the interests of the members of the Settlement Class; (v) questions of law and fact common to the Settlement Class predominate over any questions affecting only individual Class Members; and (vi) a class action is superior to other available methods for the fair and efficient adjudication of this action.

4. GRANTING preliminary approval of the Settlement Agreement, as revised to (a) conform the definition of the Class to the definition in paragraph 1 above, (b) strike from Section 3.4(d) the provision permitting modifications to allocations of payments to Class Members, and (c) add a provision to address the possibility that there are unclaimed funds at the end of the notice and claim period, and, specifically, a provision that if there are more than $10,000 in unclaimed funds at the end of the notice and claim period, the Administrator shall carry out a second round of distributions following the same allocation formula used in the initial round of allocations, and if there are less than $10,000 in unclaimed funds at the end of the notice and

claim period, the unclaimed funds shall be donated to a charity agreed upon by counsel for Plaintiff and counsel for the Settling Defendants. Granting such preliminary approval is warranted in that (i) the Settlement Agreement results from good faith, arm's-length negotiations; (ii) the relief provided to the Settlement Class by the Settlement Agreement as revised is adequate; (iii) the Settlement Agreement as revised treats Class Members equitably relative to each other; and (iv) Class Counsel and the Settling Hotel Defendants' counsel are experienced in class-action wage-and-hour litigation and had sufficient information to evaluate the Settlement Agreement.

5. Substantially APPROVING the form and content of the Proposed Notice and finding that the process described for providing notice to the Class Members (sending the proposed notice by mail and publishing it in a newspaper or online platform agreed upon by Plaintiffs and Settling Hotel Defendants) comports with Rule 23(c)(2)(B); and PERMITTING the parties to update any dates and deadlines in the Class Notice and Claim Form to conform with this report and recommendation and any orders of the Court.
6. APPOINTING Analytics Consulting LLC as Administrator, so that Analytics Consulting LLC is authorized to mail the Notice and Claim Forms, once updated, consistent with the revised Settlement Agreement, this report and recommendation, and any orders of the Court. Such mailing (and other forms of notice) shall take place within 14 days of receipt by the Administrator of the class list, which Plaintiffs' counsel shall provide to the Administrator within three days of Your Honor's issuance of an order addressing the Sixth Motion.
7. REQUIRING the Administrator, within five days after the deadline for Class Members to opt out (the opt out deadline is 90 days from the date of the mailing of the Notice) to file any written

objections to the Settlement Agreement submitted by a Class Member who has not opted out and that is postmarked on or before the deadline for Class Members to opt out.

8. SCHEDULING a Fairness Hearing for 120 days after Your Honor issues an order addressing the Sixth Motion, at a time and location to be determined by Your Honor.

Additionally, for the reasons set forth above, the Fifth Motion (ECF 370) is deemed withdrawn. The Clerk of Court is respectfully requested to terminate ECF 370.

DATED: July 8, 2026
New York, New York

Respectfully Submitted & So Ordered,

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Garnett.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).